734 N.E.2d 281 (2000)
In re: The Matter of the PATERNITY OF BABY DOE,
Chad Michael Jones, Appellant,
v.
Mary Jane Maple, Appellee,
Jeffrey Gauck and Michelle Gauck, Intervening Appellees.
No. 16A01-0001-JV-35.
Court of Appeals of Indiana.
August 30, 2000.
*282 Merle B. Rose, Indianapolis, Indiana, Attorney for Appellant.
Timothy D. Day, Comer Day & Ertel, Osgood, Indiana, Attorney for Appellee.
John Q. Herrin, Wood Tuohy Gleason Mercer & Herrin, Indianapolis, Indiana, Attorney for Intervening Appellees.

OPINION
DARDEN, Judge

STATEMENT OF THE CASE
Chad Jones appeals the denial of his motion to set aside the trial court's grant of summary judgment in favor of Jeffrey *283 and Michelle Gauck, intervenors in Jones' paternity action.
We affirm.

ISSUE

Whether the trial court erred in denying Jones' motion.

FACTS
On July 20, 1998, Mary Jane Maple signed a "Consent of Biological Mother to Private Adoption," (R. 91), wherein she averred that she was seven months pregnant and had determined that Jeffrey and Michelle Gauck were the proper persons to adopt her unborn child. Maple also averred that the identity of the father of her unborn child was "unknown to [her]." (R. 91). On August 6, 1995, the Gaucks filed a "Verified Petition for Private Adoption of Unborn Child." (R. 78). Maple's daughter, A., was born on August 16, 1998, and was released from the hospital to the Gaucks. On August 31, 1998, Maple executed another consent to adoption in favor of the Gaucks wherein she again averred that the "identity and whereabouts of the biological father is not known." (R. 76). On October 15, 1998, a Department of Health Putative Father Registry Affidavit verified that no putative father was registered for a child born to "a mother named Mary Jane Maple." (R. 101).
On February 17, 1999, while the Gaucks' petition to adopt A. was still pending, Chad Jones filed a "Complaint to Establish Paternity" wherein he averred that he was the biological father of A. Also in the petition, Chad stated that he was aware of the pending adoption petition and did not want A. to be adopted. Jones also filed a "Putative Father Registry Form," which included his name as well as Maple's name. On March 26, 1999, the Gaucks filed a motion to intervene which the trial court granted. They subsequently filed a summary judgment motion wherein they argued that Jones' failure to register with the Putative Father Registry within the required time period constituted an irrevocable implied consent to the adoption. In support of their motion, the Gaucks designated the following materials: 1) their August 6, 1998, petition to adopt; 2) Maple's August 31, 1998, consent to the adoption; and 3) the October 15, 1998, Putative Father Registry affidavit which showed that Jones had not registered with the Registry as of that date.
The Gaucks also designated an affidavit from Maple wherein she averred that she was uncertain as to the identity of A.'s biological father because at the time of A.'s conception Maple "had engaged in sex with more than one male companion." (R. 95). Maple further averred that "there is no possibility that Chad Jones could claim that he was not aware that I was pregnant with a child and that he could potentially be the father." (R. 96). According to Maple, she and Jones shared common friends, and it was "not possible that he did not learn from one of these common friends that [Maple] was pregnant with [A.]." (R. 96). Maple further averred that prior to the adoption, one of Jones' friends took adoption documents sent to Maple by her attorney and gave them to Jones.
Jones designated no evidence to contradict the Gaucks' evidence. Neither he nor his attorney appeared at the summary judgment hearing. In June 1999, the trial court granted summary judgment in favor of the Gaucks based upon Jones' failure to "timely register with the Indiana Putative Father Registry as required by Indiana Code 31-19-1." (R. 57). Two months later, pursuant to Ind. Trial Rule 60(B), Jones filed a motion for relief from judgment wherein he alleged that the summary judgment order was entered "by mistake, surprise and excusable neglect," and that the judgment was "created by fraud and misrepresentation of the adverse party." (R. 55).
At a hearing on the motion, Jones testified that he did not know that Maple had been pregnant or given birth until February 1999 when his cousin told him about A. *284 According to Jones, Maple was his girlfriend "for a while," they broke up at the end of 1997, (R. 141), and Maple never told him that she was pregnant. According to Jones, he only saw Maple one time when she was pregnant, in March 1998, and she was sitting in a car.
Jones' attorney during the summary judgment proceedings, John Kellerman, testified that he had not designated any materials in opposition to the Gaucks' summary judgment materials because Jones failed to attend scheduled appointments to prepare a responsive affidavit. According to Kellerman, he told both Jones and his family the importance of counter affidavits wherein Jones and his family could allege that some of Maple's statements in her consents to the adoption were untrue. Kellerman also explained that he did not tell Jones the date of the summary judgment hearing because it was a "legal argument where there's no testimony... permitted." (R. 197). Kellerman did not explain his absence from the summary judgment hearing.
The trial court denied Jones' motion to set aside the judgment.

DECISION
The decision whether to set aside a judgment is given substantial deference on appeal. Butler v. Shipshewana Auction, Inc., 697 N.E.2d 1285, 1288 (Ind.Ct. App.1998). Our standard of review is limited to determining whether the trial court abused its discretion. Id. An abuse of discretion occurs where the trial court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief. Id.
In reviewing the trial court's decision, we will not reweigh the evidence or substitute our judgment for that of the trial court. Id. Upon a motion for relief from judgment, the burden is on the movant to show sufficient grounds for relief under Ind. Trial Rule 60(B). Id. The movant must also show that he has a good and meritorious defense to the cause of action. Id. at 1289. A meritorious defense is one showing, if the case was retried on the merits, a different result would be reached. Id.
The dispositive issue in this case is whether Jones has a meritorious defense. Jones contends that he does. As the sole authority to support his contention, Jones directs us to 1) Walker v. Campbell, 711 N.E.2d 42 (Ind.Ct.App.1999), which has been vacated by our supreme court,[1] and 2) the dissent in Lehr v. Robertson, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983).
The Gaucks respond that because "Jones did not register with the Putative Father Registry in a timely ma[nn]er, he has no meritorious defense and, therefore, is not entitled to contest the adoption." The Gaucks' Brief, p. 4. We agree with the Gaucks.
The Putative Father Registry is administered by the State Department of Health. Ind.Code § 31-19-5-2.[2] The purpose of the Registry is to provide notice to a putative father that a petition to adopt a child has been filed. Ind.Code § 31-19-5-3.[3] A *285 putative father who files with the Registry not later than 30 days after the child's birth or the date of filing of the petition for his child's adoption, whichever occurs later, is entitled to notice of the child's adoption. Ind.Code § 31-19-5-4.[4] However, if a putative father does not register within the required 30 days, the putative father is not entitled to notice of the adoption. Ind. Code § 31-19-4-6.[5] A putative father's failure to register "constitutes [his] irrevocably implied consent to the child's adoption." Ind.Code § 31-14-20-2.[6] Further, a putative father whose consent to adoption is implied is not entitled to either challenge the validity of his implied consent or establish paternity. Ind.Code § 31-19-9-13,[7] 14.[8]
When construing a statute, we are guided by rules of statutory construction. Kaghann's Korner v. Brown and Sons Fuel Company, Inc., 706 N.E.2d 556, 561 (Ind.Ct.App.1999). When a statute is clear and unambiguous on its face, the court need not, and indeed must not, interpret the statute. Id. Rather, we give the statute its plain and clear meaning. Id.
Here, Jones did not register until February 1999, six months after the Gaucks filed their petition to adopt A. Pursuant to the plain language of the statute, Jones' registration was untimely. He was therefore not entitled to notice of the adoption. Rather, his failure to register constituted an implied consent to A.'s adoption. Jones, however, appears to challenge the application of the Putative Father Registry under the facts of this case. According to Jones, because he did not learn that Maple was pregnant or had given birth until February 1999, it was impossible for him to comply with the time requirements imposed by the Registry.
Although we have found no Indiana cases addressing this issue, other courts from sister states considering cases similar to this one have placed the responsibility for promptly asserting parental rights on the putative father, even when the mother of the child has attempted to prevent the father's knowledge of or contact with the child. In Robert O. v. Russell K., 80 N.Y.2d 254, 590 N.Y.S.2d 37, 604 N.E.2d 99 (1992), Robert O. and Carol A. became engaged, and Robert moved into Carol's apartment in December 1987. In February *286 1988, Robert moved out of Carol's apartment and terminated all contact with her. Carol was pregnant but did not tell Robert. Instead, Carol approached two friends who agreed to adopt her child. Carol gave birth to a boy in October 1988, and he was immediately placed with Carol's friends. Carol signed a statement indicating that there was no one who was entitled to notice of the adoption or whose consent was required, and the adoption was finalized in May 1989.
Between the time that Carol and Robert separated in February 1988 and January 1990, Robert made no attempt to contact Carol although she continued to live in the same house and did nothing to conceal her pregnancy. In January 1990, Carol and Robert reconciled, and Carol informed Robert about their child's birth. Robert registered with the Putative Father Registry and filed a petition to vacate the adoption which the trial court denied.
On appeal, Robert argued that the trial court erred in denying his petition. According to Robert, he was not aware of the child's birth. He explained that he registered with the Putative Father Registry and filed his cause of action as soon as he learned of the child's birth. In affirming the trial court, the New York Court of Appeals responded to Robert's argument as follows:
To conclude that petitioner acted promptly once he became aware of the child is to fundamentally misconstrue whose timetable is relevant. Promptness is measured in terms of the baby's life not by the onset of the father's awareness. The demand for prompt action by the father at the child's birth is neither arbitrary not punitive, but instead a logical and necessary outgrowth of the State's legitimate interest in the child's need for early permanence and stability.... During the first months of his son's life, petitioner's only connection to the infant was biological. That he now asserts that he was willing to be a custodial parent, had he only known, adds nothing to his argument, even if we accept the dubious proposition that a willingness so abstract and amorphous has some legal significance.
Id. at 103-04.
Similarly, in Matter of Adoption of S.J.B., 294 Ark. 598, 745 S.W.2d 606 (1988), an unmarried 15 year-old gave birth to a child as a result of an isolated sexual encounter with the biological father. The mother declined to identify the father and made no effort to notify him of the child's birth. The father was, therefore, apparently unaware of the child. The mother consented to the adoption of the child, but the trial court terminated the adoption proceedings based upon the lack of notice to the biological father.
On appeal, the Arkansas Supreme Court reversed the trial court. Although the appellate court acknowledged that the biological father was probably unaware of the child's existence, the court emphasized that he "was not interested enough in the outcome of the sexual encounter with this fifteen-year-old girl to even inquire concerning the possibility of her pregnancy." Id. at 607. The court further explained that the putative father did not 1) avail himself of the statutory procedure for establishing paternity, 2) take any affirmative action concerning his paternity, or 3) inquire about the possibility of fatherhood.
Lastly, in Matter of Baby Boy K., 546 N.W.2d 86 (S.D.1996), Mother, an unmarried woman, gave birth to K. in February 1994. Four days later, she filed a petition for the voluntary termination of her parental rights. According to the petition, the biological father of the child was unknown to her. The trial court terminated the parental rights of Mother and the "unknown alleged natural father." Id. at 87. Three months later, W.B.L. asserted that he was the child's biological father and requested blood tests to establish paternity. In an accompanying affidavit, W.B.L. stated that he was unaware of Mother's pregnancy or the birth of his child until *287 March 1994. Father stated that he instituted a paternity action after he learned of his fatherhood.
The trial court granted K.'s adoptive parents' motion to intervene and ruled that it would not reopen the case. W.B.L. appealed. In affirming the trial court, the South Dakota Supreme Court explained as follows:
When a putative father is ignorant of his parenthood due to his own fleeting relationship with the mother and her unwillingness to later notify him of her pregnancy, the child should not be made to suffer. The trial court in this case was faced with a child who was unwanted by his mother and unknown to his father. After sixty days had passed and no one had asserted a paternal interest, the State's obligation to provide this unwanted and unclaimed child with a permanent, capable, and loving family became paramount. W.B.L.'s assertion, another month later, that Mother should have told him if he happened to father a child, cannot overcome the State's fully matured interest in protecting the child's permanent home.
Id. at 101.
Here, Jones and Maple dated for "a while." (R. 141). After they broke up, Jones made no effort whatsoever to contact Maple. He apparently was not interested enough to even inquire concerning the possibility of a pregnancy. He did not register with the Registry until February 1999, six months after the Gaucks had filed their petition to adopt A., when he claims that he learned of A.'s birth. To conclude that Jones acted promptly once he became aware of the child is to misconstrue the relevant timetable. See Robert O. We agree with the court in Robert O. that promptness is measured in terms of the baby's life not by the onset of father's awareness.
We further agree with the court in Baby Boy K. that a child should not be made to suffer when a putative father is ignorant of his parenthood due to his fleeting relationship with the mother and her unwillingness to notify him about the pregnancy. The child should also not be made to suffer when a putative father makes no inquiry regarding the possibility of a pregnancy.
Indiana has a strong interest in providing stable homes for children. B.G. v. H.S., 509 N.E.2d 214, 217 (Ind.Ct.App. 1987), reh'g denied. To this end, early, permanent placement of children with adoptive families furthers the interest of both the child and the state. Id. If a putative father fails to register with the Registry within 30 days of the child's birth or the date of the filing of the petition for the child's adoption, whichever occurs later, the State's obligation to provide this child with a permanent, capable and loving family becomes paramount.
Jones' argument is an invitation for us to reweigh the evidence. This we cannot do. Given the State's interest in providing the child with a permanent, stable and loving family, Jones' argument that it was impossible for him to comply with the time requirements of the Registry is unavailing. He therefore has no meritorious defense, and the trial court did not err in denying his motion to set aside the grant of summary judgment in favor of the Gaucks.
Affirmed.
FRIEDLANDER, J., and KIRSCH, J., concur.
NOTES
[1] Walker v. Campbell, 719 N.E.2d 1248 (Ind. 1999).
[2] I.C. § 31-19-5-2 provides that the "putative father registry is established within the state department of health. The state department shall adopt rules under IC 4-22-2 to administer the registry."
[3] I.C. § 31-19-5-3 provides as follows:

The registry's purpose is to determine the name and address of a father:
(1) whose name and address have not been disclosed by the mother of the child, on or before the date the mother executes a consent to the child's adoption, to:
(A) an attorney; or
(B) an agency;
that is arranging the adoption of the child; and
(2) who may have conceived a child for whom a petition for adoption has been or may be filed to provide notice of the adoption to the putative father.
[4] I.C. § 31-19-5-4 provides that a "putative father of a child who registers in accordance with this chapter (or IC 31-3-1.5 before its repeal) is entitled to notice of the child's adoption under Rule 4.1 of the Indiana Rules of Trial Procedure."
[5] I.C. § 31-19-4-6 provides as follows:

Except as provided in section 3 of this chapter, if:
(1) on or before the date the mother of a child executes a consent to the child's adoption, the mother does not disclose to the attorney or agency arranging the adoption the identity or address, or both, of the putative father; and
(2) the putative father has not registered with the putative father registry under IC 31-19-5 within the period under IC XX-XX-X-XX;
the putative father is not entitled to notice of the adoption.
[6] I.C. § 31-14-20-2 provides as follows:

(a) A man who fails to register with the putative father registry as required by section 1 of this chapter waives the right to notice of an adoption of a child who is the subject of the paternity action:
(1) if the adoption is filed before the man establishes the paternity; and
(2) in which the child's mother does not disclose to an attorney or agency arranging the adoption the name or address of the child's putative father.
(b) A waiver under this section constitutes the man's irrevocably implied consent to the child's adoption.
[7] I.C. XX-XX-X-XX provides as follows:

A putative father whose consent to adoption is implied under this chapter or IC XX-XX-X-XX is not entitled to challenge:
(1) the adoption; or
(2) the validity of the putative father's implied consent to the adoption.
[8] I.C. § 31-19-9-14 provides that a "putative father whose consent to adoption of a child is implied under this chapter or IC XX-XX-X-XX is not entitled to establish paternity under IC 31-14."