In the Matter of the ADOPTION OF J.D.C.

Ronald B. Hunter, Appellant–Petitioner,

v.

John and Jane Doe, Appellees–Respondents.

No. 49A02–0010–CV–0678.

Court of Appeals of Indiana.

June 22, 2001.

Ronald B. Hunter, Indianapolis, IN, Appellant Pro Se.

Thomas N. Olvey, Michael D. Dorelli, Leagre Chandler & Millard LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Ronald B. Hunter appeals the trial court's denial of his Motion to Vacate Judgment following the adoption of Carrie Colaric's biological child. Hunter claims that, as the putative father, he had a right to receive notice of the adoption proceedings. He also asserts that the trial court failed to appoint him counsel. Because we find that Hunter failed to register with the Indiana Putative Father's Registry,[1] we conclude that he was not entitled to notice of the adoption proceedings. Further, any error in not appointing counsel for Hunter was harmless. Therefore, we affirm.

1. Ind.Code § 31–19–5–1 *et. seq.*

### Facts and Procedural History

The relevant facts reveal that Hunter and Colaric had an intimate relationship in March of 1999. During this relationship, Colaric became pregnant. Hunter knew of Colaric's pregnancy. On November 26, 1999, Colaric gave birth to a child. Two days later, Colaric voluntarily terminated her parental rights and consented to the adoption of the child. She also signed a statement naming Hunter as the putative father, but averring that she did not know of his whereabouts and was unaware of anyone who would be able to locate him. The adoption agency then placed the child with the adoptive couple on the same day.

On December 23, 1999, the adoptive couple petitioned to adopt the child. The putative father's registry was checked while the adoption was pending, but no one, including Hunter, had registered as the child's putative father. The adoption was finalized on March 9, 2000. Hunter never registered with the putative father's registry and was not given notice of the proceedings. On September 25, 2000, Hunter filed a Motion to Vacate Judgment with the trial court. The court denied the motion, and Hunter now appeals.

### Discussion and Decision

Hunter contends that the trial court erred in denying his motion to vacate the adoption because he was entitled to notice of the proceedings as the putative father. Specifically, he asserts that since his identity was known, there should have been efforts to discover his whereabouts.

The decision of whether to set aside a judgment is given substantial deference on appeal. *In re Paternity of Baby Doe*, 734 N.E.2d 281, 284 (Ind.Ct.App.2000). Thus, we review such a decision for an abuse of discretion, which only occurs where the trial court's judgment is clearly against the

logic and effect of the facts and inferences supporting the judgment for relief. *Id.*

The United States Supreme Court clarified the rights of putative fathers in *Lehr v. Robertson,* 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983). In that case, the Court held that a putative father was not entitled to notice of adoption proceedings although his existence and whereabouts were known because he failed to establish a substantial relationship with the child. *Id.* at 265, 103 S.Ct. 2985. The putative father did not preserve his rights in the putative father's registry, was neither present at the birth nor visited the child in the hospital, was not listed as the father on the birth certificate, did not live with the child's mother after the birth, and provided no financial support to the child. One month after the adoption of the child became final, the putative father filed a petition asking for a determination of paternity, support, and visitation.

The Court concluded that a mere biological link between the putative father and the child does not require a State to listen to his opinion regarding the child's best interests unless that putative father takes advantage of the biological connection by forming a relationship with that child. *Id.* at 262, 103 S.Ct. 2985. For an unmarried father, the Court noted, statutes have been enacted to protect his rights to assume a responsible role in the child's life. *Id.* at 263, 103 S.Ct. 2985. The Court upheld this statutory scheme as procedurally adequate because it provides a means of protecting one's rights as a father by mailing in a postcard to the putative father's registry. *Id.* at 264, 103 S.Ct. 2985. Further, the Court articulated that ignorance of the putative father's registry was not a sufficient reason to criticize it. *Id.* The Court emphasized:

> The legitimate state interests in facilitating the adoption of young children and

having the adoption proceeding completed expeditiously that underlie the entire statutory scheme also justify a trial judge's determination to require all interested parties to adhere precisely to the procedural requirements of the statute. The Constitution does not require either a trial judge or a litigant to give special notice to nonparties who are presumptively capable of asserting and protecting their own rights.

*Id.* at 265, 103 S.Ct. 2985 (comparing the idea that a trial judge or a litigant provide special notice to a putative father when the father is capable of asserting and protecting his own rights to a defendant giving advice to a plaintiff when the statute of limitations is about to expire. *Id.* n. 23). The Court stated, "[t]he actions of judges neither create nor sever genetic bonds." *Id.* at 261, 103 S.Ct. 2985.

In an effort to balance the competing interests involved in adoption, Indiana established the Indiana Putative Father's Registry in 1994, managed by the Indiana Department of Health. Ind.Code § 31–19–5–2. The purpose of the registry is to provide notice to a putative father that a petition for adoption has been filed. *Baby Doe,* 734 N.E.2d at 284 (citing Ind.Code § 31–19–5–3). A putative father who registers within thirty days after the child's birth or the date the adoption petition is filed, whichever occurs later, is entitled to notice of the child's adoption. Ind.Code §§ 31–19–5–4, 31–19–5–5; 31–19–5–12. However, Indiana Code § 31–19–4–6 reads in pertinent part:

> (1) on or before the date the mother of a child executes a consent to the child's adoption, the mother does not disclose to the attorney or agency arranging the adoption the identity or address, or both, of the putative father; and
>
> (2) the putative father has not registered with the putative father registry

under IC 31–19–5 within the period under 31–19–5–12;

the putative father is not entitled to notice of the adoption. A putative father's failure to register not only waives his right to notice of the adoption but also irrevocably implies his consent. Ind.Code § 31–19–5–18. Further, a putative father whose consent has been implied may not challenge the adoption or establish paternity. Ind. Code §§ 31–19–9–13, 31–19–9–14.

The Indiana Putative Father's Registry was recently upheld in the decision, *In re Paternity of Baby Doe*, 734 N.E.2d 281 (Ind.Ct.App.2000). We held that a putative father was not entitled to notice of an adoption petition and that his consent was irrevocably implied where the biological mother did not disclose his identity or address and he failed to register with the putative father's registry until six months after the adoption petition was filed. *Id.* at 287. We reasoned that because "Indiana has a strong interest in providing stable homes for children," early and permanent placement of children with adoptive families is of the utmost importance. *Id.* If a father fails to register within the specified amount of time allowed under the statute, then "the State's obligation to provide this child with a permanent, capable and loving family becomes paramount." *Id.* Considering this important State interest, we rejected the putative father's argument that he could not have complied with the statutory requirements because he did not know of the child's existence until after his frame of time to register had passed. *Id.*

Moreover, other jurisdictions have similarly concluded that a putative father who fails to register with the putative father's registry waives his right to notice of adoption proceedings and impliedly consents to the adoption. For example, our court relied upon *Robert O. v. Russell K.*, 80 N.Y.2d 254, 590 N.Y.S.2d 37, 604 N.E.2d 99 (1992) in our holding in *Baby Doe*. In *Robert O.*, the New York Court of Appeals concluded that the putative father's notice or consent was not needed for the adoption where he failed to avail himself of the methods to qualify for notice until some ten months after the adoption became final. *Id.*, 590 N.Y.S.2d 37, 604 N.E.2d at 100. The court explained that although the putative father was not immediately aware of the child, not only due to his lack of effort to discover the child but also because of the biological mother's efforts to keep him from knowing about the child,

> [p]romptness is measured in terms of the baby's life not by the onset of the father's awareness. The demand for prompt action by the father at the child's birth is neither arbitrary nor punitive, but instead a logical and necessary outgrowth of the State's legitimate interest in the child's need for early permanence and stability.

*Id.*, 590 N.Y.S.2d 37, 604 N.E.2d at 103–04 (cited in *Baby Doe*, 734 N.E.2d at 286–87).

Further, our court in *Baby Doe* noted that both the Arkansas Supreme Court and the South Dakota Supreme Court addressed a similar issue and concluded that putative fathers, who failed to avail themselves of statutory procedures for establishing their paternal rights, were not allowed to terminate or intervene in adoption proceedings. 734 N.E.2d at 286–87 (discussing *In re Adoption of S.J.B.*, 294 Ark. 598, 745 S.W.2d 606, 607–08 (1988) and *Matter of Baby Boy K.*, 546 N.W.2d 86 (S.D.1996)). In *S.J.B.*, the Arkansas Supreme Court distinguished the United States Supreme Court decision of *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), which protected an unwed father's rights where he had a substantial relationship with his children. Unlike *Stanley*, where a relationship be-

tween the father and his children existed, the court in *S.J.B.* proclaimed, "the father is merely 'the biological link' which brought the child into existence." *S.J.B.*, 745 S.W.2d at 608. Thus, the father was not entitled to notice of the adoption proceedings. *Id.* at 609.

Similarly, in *Baby Boy K.*, the South Dakota Supreme Court was faced with a situation where the biological mother asserted that even if she could identify the father, she could not give his complete name and address. The court held that the putative father, who later discovered that the biological mother had lied about her inability to identify or locate him, could not vacate the termination of his parental rights, reasoning that "[b]ecause children require early and consistent nurturing of their emotional as well as physical needs," an unwed father must quickly grasp his opportunity interest to trigger protection under the law. 546 N.W.2d at 97. The court explained that the need for early assurances in a child's life requires that a putative father grasp the fleeting opportunity to take on parenting responsibilities before the opportunity is lost. *Id.* (quoting Elizabeth Buchanan, *The Constitutional Rights of Unwed Fathers Before and After Lehr v. Robertson*, 45 Ohio St. L.J. 313, 364 (1984)). *See also In re A.S.B.*, 293 Ill.App.3d 836, 228 Ill.Dec. 238, 688 N.E.2d 1215, 1223 (1997) and *In re K.J.R.*, 293 Ill.App.3d 49, 227 Ill.Dec. 190, 687 N.E.2d 113, 119–20 (1997) (both holding that a putative father is barred from intervening in an adoption proceeding when he fails to register with the putative father's registry).

▪ Thus, under the Indiana adoption statutes and corresponding case law, Hunter was not entitled to notice of the adoption proceedings because Colaric did not disclose his address to the adoption agency and he failed to preserve his rights by registering in the putative father's registry.[2] An inquiry of his whereabouts was not required due to this failure to register.

▪ Yet, Hunter maintains that he was an "interested party" entitled to notice under Indiana Code § 31–19–4–10, which reads, "[t]he court shall give notice of hearing and the opportunity to file objection to parents, putative fathers, other necessary parties, and interested parties that the court in the court's discretion directs." Hunter relies upon *In re Adoption of I.K.E.W.*, 724 N.E.2d 245 (Ind.Ct.App. 2000) to support his argument. In *I.K.E.W.*, both the child's maternal grandparents and foster parents filed petitions for adoption within four days of each other. The foster parents' petition was granted during a 1:00 p.m. hearing on April 9, 1999. The grandparents had a hearing scheduled for the same day at 1:30 p.m. on their motion to continue the foster parents' petition and to consolidate the petitions. During the 1:30 p.m. hearing, the court determined that it did not have jurisdiction to go forward. We held, under these extraordinary circumstances, that the grandparents should have been given notice of the 1:00 p.m. hearing. *Id.* at 250. We reasoned that under Indiana Code § 31–19–4–10, trial courts should inquire into who might be an interested party entitled to notice. *Id.* at 251.

The extraordinary circumstances in *I.K.E.W.* are distinguishable from the instant case. There were two competing adoption petitions pending in *I.K.E.W.*, on which hearings were scheduled within one-half hour of each other. The court found

---

**2.** We note that Indiana Code § 31–19–4–6 imposes no duty on a biological mother to disclose the identity or address of the putative father. Rather, it only contemplates the situation where the mother does not disclose this information.

these unusual circumstances were sufficient to set aside the judgment, even though noncustodial grandparents are not entitled to intervene in adoption proceedings under the law. *Id.* at 249. The court's analysis focused upon Indiana Code § 31–19–4–10, which discusses that in addition to parents, putative fathers, and other necessary parties, interested parties should be given notice as the court's discretion directs.

Indiana Code § 31–19–4–10 refers to several categories of people, namely parents, putative fathers, other necessary parties, and interested parties for the court to give notice of hearing and the opportunity to file objection. Having failed to take the steps necessary to receive notice and an opportunity to object as a putative father by filing with the putative father's registry, he cannot resurrect that right by claiming status under another category. Despite knowing that he and Colaric had sexual relations during the time she became pregnant, and that she actually became pregnant, he failed to preserve his rights by registering as a putative father. Hunter claims that he began his efforts to assert his paternity as soon as he knew of the child's existence. However, he did not move to vacate the judgment until September 25, 2000, over six months after the adoption became final. In the interest of providing stability and permanence for children, Indiana provides a statutory scheme with a specified time by which a putative father must register. Not only did Hunter fail to register within the specified time, he failed to register at all. Such stringent requirements are not punitive but are instead necessary to advance the State's policy interest of establishing early and permanent placement of children into loving and stable homes. Hunter was not entitled to any special notice of the adoption proceeding, as the State has no obligation to assert Hunter's rights for him

where Hunter was capable of protecting his interest himself. Thus, the trial court did not err in denying Hunter's motion to vacate the judgment.

■ Hunter also asserts that the trial court erred in not appointing him counsel pursuant to the pauper counsel statute. Indiana Code § 34–10–1–1 provides that "[a]n indigent person who does not have sufficient means to prosecute or defend an action may apply to the court in which the action is intended to be brought, or is pending, for leave to prosecute or defend as an indigent person." Indiana Code § 34–10–1–2 requires that the court be satisfied that the person does not have sufficient means to prosecute or defend before appointing counsel. Here, the trial court denied his petition for counsel without a specific determination as to Hunter's indigency. Hunter maintains on appeal that he was at least entitled to a hearing on the matter.

However, Hunter was barred as a matter of law from challenging the adoption decree pursuant to Indiana Code § 31–19–9–13 because his consent is implied as a result of his failure to register in the putative father's registry. Thus, even if the trial court had appointed counsel for Hunter, there were no contested issues on which counsel would have been able to offer assistance. Therefore, any error in not holding a hearing or appointing counsel was harmless because Hunter was unable to succeed on his claim as a matter of statutory law.

Judgment affirmed.

ROBB, J., and BROOK, J., concur.