### In re ADOPTION OF INFANT FEMALE FITZ.

**Randy Rudd, Intervenor–Appellant,**

v.

**Randall Agan Pritt, Roberta Lynn Pritt, Robert N. Kruzick, and Kimberly L. Kruzick, Petitioners–Appellees.**

No. 29A05–0201–CV–41.

Court of Appeals of Indiana.

Nov. 13, 2002.

**434**

Peter A. Kenny, Rensselaer, IN, Attorney for Appellant.

Charles P. Rice, Boveri Murphy Rice Ryan & LaDue, LLP, South Bend, IN, Attorney for Appellees.

## OPINION

KIRSCH, Judge.

Randy Rudd appeals the trial court's order striking his motion for relief from judgment. The sole issue is whether the trial court erred in striking the motion as improperly filed.

We reverse and remand with instructions.

## FACTS AND PROCEDURAL HISTORY[1]

■ Rudd and Heidi Fitz began living together in February 2000. Fitz became pregnant in April 2000. She eventually ended their relationship and decided to place their unborn baby for adoption. On December 3, 2000, before the child was born, Fitz's aunt went to Rudd's home seeking his consent to the adoption. When Rudd refused to consent, the aunt gave Rudd and his new wife written notice pursuant to IC section 31–19–3–1, which advised Rudd that he would lose his right to contest the adoption if he did not file a paternity action within thirty days of receiving the notice. The notice was prepared by Steven Kirsh, attorney for the prospective adoptive parents. The follow-

---

1. We grant Rudd's Motion to File a Supple-    mental Appendix.

ing day, Rudd registered with the Indiana State Department of Health Putative Father Registry;[2] however, he did not file a paternity action. Rudd and Fitz's daughter was born in December 2000.

On January 2, 2001, Robert and Kimberly Kruzick filed a petition in the Hamilton Superior Court to adopt Rudd's daughter. The following day, thirty-one days after Rudd received the statutory notice, Steven Kirsh telephoned Rudd, told him that he was representing the adoptive parents and asked Rudd why he had not filed a paternity action. Kirsh explained that Rudd had thirty days after receiving the statutory notice to file his paternity action, that he had missed that opportunity, and that, at that point, there was nothing Rudd could do. Rudd filed a petition for paternity in the White Circuit Court that same day. On January 5, 2001, Rudd filed a notice in the Hamilton Superior Court to contest the adoption. Rudd's paternity action was consolidated with the adoption proceeding in the Hamilton Superior Court. Attorney Charles Rice entered an appearance on behalf of the Kruzicks on January 12, 2001. Steven Kirsh's motion to withdraw from the case was filed and granted on January 29, 2001. On February 14, 2001, and February 20, 2001, the trial court held a hearing on the petitions. The Kruzicks did not appear in court. On July 30, 2001, the trial court entered an order finding that Rudd's consent to the adoption was irrevocably implied because he filed his paternity action one day too late.

On November 2, 2001, Rudd filed a motion for relief from judgment pursuant to Ind. Trial Rule 60(B). The motion included an accompanying affidavit in which Rudd's wife averred that on August 24, 2001, a woman identifying herself as Mrs. Kruzick contacted her. Mrs. Kruzick told Rudd's wife that she and her husband had returned Rudd's daughter to the adoption agency on January 15, 2001, after learning that Rudd was contesting the adoption. At that time, the Kruzicks informed their attorney, Charles Rice, that they did not want to contest Rudd's efforts to establish paternity of the child. Mrs. Kruzick further informed Rudd's wife that she and her husband were not the party opposing Rudd at the February 2001 hearing. The motion also included an accompanying affidavit from Rudd's mother in which she also averred that Mrs. Kruzick telephoned her and gave her the same information. Rudd's motion complained that at the time of the hearing in this case, "opposing counsel either had no client who was seeking to adopt Infant Female Fitz, other than possibly an adoption agency, or was acting contrary to the instructions of his clients." *Appellant's Appendix* at 19. Rudd's motion concluded as follows:

> Randy Rudd prays this court to set his motion for hearing; order Charles Rice to produce the Kruzicks or whomever filed the adoption action herein for examination by the court and counsel, for purposes of determining whether the adoptive parents herein do in fact intend on adopting Infant Female Fitz, and if it is determined that the aforesaid adoptive parents do not intend to proceed with the adoption of [I]nfant Female Fitz, for the court to vacate its July 27, 2001, order, and allow Randy Rudd to

---

**2.** The purpose of the Indiana Putative Father Registry is to provide notice to a putative father that a petition to adopt a child has been filed. *In Re Paternity of Baby Doe,* 734 N.E.2d 281, 284 (Ind.Ct.App.2000). A putative father who files with the Registry not later than thirty days after the child's birth or the date of filing of the petition for his child's adoption, whichever occurs later, is entitled to notice of the child's adoption. *Id.* at 284–85.

proceed with his paternity action seeking to establish his paternity of Infant Female Fitz.

*Id.*

On November 26, 2001, Rice as attorney on behalf of "Adoptive Parents" filed a motion to strike Rudd's motion. On December 12, 2001, without a hearing, the trial court ordered that Rudd's motion be "stricken from the record as improperly filed pursuant to the Trial Rules." *Id.* at 26. On December 21, attorney Steven Kirsh entered an appearance on behalf of Randall and Roberta Pritt, filed an amended petition for adoption on their behalf, and sought to substitute them for the Kruzicks. Although the petition to substitute was not filed until December 21, 2001, fax machine notations on the motion indicate that it was circulated among parties and counsel in February 2001, before the hearing. The trial court granted the motion to substitute and entered a decree of adoption in favor of the Pritts on December 27, 2001.

## DISCUSSION AND DECISION

■ Rudd contends that the trial court erred in striking his motion to set aside the judgment as improperly filed. Specifically, he contends that the affidavits submitted in support of his Ind. Trial Rule 60(B) motion support the conclusion that the trial court's July 30, 2001, ruling against him was procured by fraud. We agree.

■ A trial court is vested with broad discretion in ruling on a motion to strike. *In Re Estate of Meyer,* 747 N.E.2d 1159, 1164 (Ind.Ct.App.2001), *trans. denied.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances supporting the judgment for relief. *Lake County Trust No. 3190 v. Highland Plan*

*Comm'n,* 674 N.E.2d 626, 628 (Ind.Ct.App. 1996), *trans. denied.*

Our supreme court recently adopted the analysis used by federal courts in analyzing claims for fraud under T.R. 60(B), which provides in relevant part as follows:

> On motion and upon such terms as are just the court may relieve a party or his legal representative from an entry of default, final order, or final judgment, including a judgment by default, for the following reasons:
>
> \*    \*    \*    \*    \*    \*
>
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

The rule also contains the following savings clause: "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or for fraud upon the court." T.R. 60(B).

■■ There are three ways to attack a judgment on the grounds of fraud on the court pursuant to this rule. *Stonger v. Sorrell,* 776 N.E.2d 353 (Ind.2002). The first method is by way of a motion filed under T.R. 60(B)(3). *Id.* Such a motion may be based on any kind of fraud (intrinsic, extrinsic, or fraud on the court) so long as it is chargeable to an adverse party and has an adverse effect on the moving party. *Id.* However, the motion is generally limited to the court in which the judgment was rendered and shall be made not more than one year after the judgment was entered. *Id.* If the time limit for the motion has not expired, this is the preferable way to challenge a judgment on grounds of fraud on the court. *Id.*

■ The second method is an independent action for fraud on the court pursuant to the savings clause of T.R. 60(B). *Id.* Independent actions are usually reserved

for situations that do not meet the requirements for a motion made under T.R. 60(B)(3). *Id.* For example, the fraud might not be chargeable to an adverse party, the movant might be seeking relief from a court other than the rendering court, or more often, the one-year time limit for T.R. 60(B)(3) motions has expired. *Id.* An independent action is subject to the doctrine of laches, and its remedy is extremely limited. *Id.*

The third method is also pursuant to the savings clause of T.R. 60(B). *Id.* This method invokes the inherent power of a court to set aside its judgment if procured by fraud on the court. *Id.* Relief is not dependent on the filing of a motion by a party to the original judgment. *Id.* Rather, the court may assert this power sua sponte. *Id.* There is no time limit for these proceedings. *Id.*

■ Regardless of which procedural avenue a party selects to assert a claim of fraud on the court, the party must establish that an unconscionable plan or scheme was used to improperly influence the court's decision and that such acts prevented the losing party from fully and fairly presenting its case or defense. *Id.*

Here, the record is not clear as to which procedural avenue Rudd selected for his T.R. 60(B) motion. Although the motion was made both within one year of the trial court's July 2001 judgment and in the court in which the judgment was rendered, the fraud was not chargeable to an adverse party. Rather, it was chargeable to an attorney who may have proceeded with the case even though his clients told him that they no longer wanted to pursue the adoption of Rudd's daughter. We therefore construe Rudd's motion as an independent action for fraud on the court.

■ An attorney representing a client is not a party to the litigation. *United Farm Bureau Mut. Ins. Co. v. Groen,* 486 N.E.2d 571, 573 (Ind.Ct.App. 1985), *trans. denied.* Rather, an attorney acts on behalf of and in the name of the client. *Id.* The attorney is the agent of the party employing him and in court also stands in his stead. *Id.* An attorney cannot proceed with a case when his clients tell him that they no longer wish to pursue it. *See* Ind. Professional Conduct Rule 1.2(a) ("A lawyer shall abide by a client's decisions concerning the objectives of representation....").

Here, Rudd alleges that opposing counsel had no client when he appeared on behalf of the Kruzicks at the February 2001 hearing. This allegation thus alleges an unconscionable plan or scheme was used to improperly influence the court's decision and that such acts prevented him from fairly presenting his case. *See Stonger,* 776 N.E.2d 353. Based upon the foregoing facts we cannot agree with the trial court that Rudd's T.R. 60(B) motion was improperly filed. Rather, if the facts that Rudd alleges are true, Rudd has established fraud on the court that justifies setting aside the trial court's July 2001 judgment.

■ To prevail on his motion, Rudd must also show a good and meritorious defense to the action. *Nwannunu v. Weichman and Assocs., P.C.,* 770 N.E.2d 871, 879 (Ind.Ct.App.2002). A meritorious defense is one showing that a different result would be reached if the case were tried on the merits. *Id.* The movant need not prove the meritorious defense, but only show enough admissible evidence to make a prima facie showing of a meritorious defense indicating to the trial court the judgment would change and the defaulted party would suffer an injustice if the judgment were allowed to stand. *Id.*

Here, Rudd alleges that he has a meritorious defense because if the Kruzicks' at-

torney had dismissed the adoption action pursuant to their request, Rudd would have been able to proceed with his paternity action. Rudd is correct.

If a putative father fails to file a paternity action within thirty days after receiving notice under IC 31–19–3–1, then his consent to the adoption of his child is irrevocably implied. *In Re Paternity of M.G.S.*, 756 N.E.2d 990, 998 (Ind.Ct.App. 2001), *trans. denied*, (citing IC 31–19–9–15). IC 31–19–9–17(a) provides that a putative father whose consent to an adoption is implied under section 15 is not entitled to establish paternity of the child. *Paternity of M.G.S.*, 756 N.E.2d at 998. However, subsection (b) provides:

> Notwithstanding subsection (a), a putative father who is barred from establishing paternity of the child under subsection (a) may establish paternity of the child in a court proceeding under IC 31–14 if:
>
> (1) the putative father submits, together with the petition to establish paternity, an affidavit prepared by the:
>
> > (A) licensed child placing agency; or
> >
> > (B) attorney
>
> that served notice or caused the notice to be served upon the putative father under IC 31–19–3–1 stating that neither a petition for adoption nor a placement of the child in a proposed adoptive home is pending; and
>
> (2) the court finds on the record, based on all the information available to the court, including an affidavit described under subdivision (1), that neither a:
>
> > (A) petition for adoption; nor
> >
> > (B) placement of the child in a prospective adoptive home;
>
> is pending.

Thus, notwithstanding subsection (a), the putative father may establish paternity of the child if the potential adoption "falls through." *Paternity of M.G.S.*, 756 N.E.2d at 998.

Here, Rudd's consent to the Kruzicks' adoption of his daughter was implied because he did not file his paternity action within thirty days of receiving notice pursuant to IC 31–19–31–1. He was therefore not entitled to establish paternity of Fitz's child while the Kruzicks' petition was pending. However, if the Kruzicks' adoption of the child fell through for any reason, including the Kruzicks' voluntary decision to dismiss their adoption petition, Rudd was entitled to establish paternity.

We further note that the trial court may not substitute one adoptive family for another adoptive family thereby preventing the putative father from establishing paternity pursuant to IC 31–19–9–17(b). First, the statute does not contemplate such a substitution. Rather, the statute clearly states that if the initial adoption falls through, the putative father is entitled to establish paternity.

Further, substitution of one adoptive family for another adoptive family is not proper pursuant to Ind. Trial Rule 17. That rule allows for the substitution of a real party in interest. A real party in interest is the true owner of the right sought to be enforced. *Hammes v. Brumley*, 659 N.E.2d 1021, 1030 (Ind.1995). He or she is the person who is entitled to the fruits of the action. *Id.* A substituted adoptive family is not the true owner of the right to be enforced and is not a real party in interest as contemplated by the rule.

Lastly, substitution of one adoptive family for another adoptive family is not proper pursuant to Ind. Trial Rule 25, which contemplates substitution of parties in the case of death, incompetency, or transfer of

interest. None of these situations apply to the case before us.

Because we have concluded that if the facts as alleged by Rudd are true, he has established fraud on the court and made a prima facie showing of a meritorious defense, we reverse and remand with instructions for the trial court to hold a hearing on Rudd's motion for relief from judgment.

Reversed and remanded with instructions.

BROOK, C.J., and DARDEN, J., concur.