**Joshua J. MATHEWS, Appellant–Respondent,**

v.

**Adam C. HANSEN, Appellee–Petitioner.**

No. 45A05–0305–CV–221.

Court of Appeals of Indiana.

Oct. 29, 2003.

Stephen Bower, Cohen & Thiros, P.C., Merrillville, IN, Attorney for Appellant.

David W. Westland, Michael J. Jasaitis, Tauer & Westland, P.C., Merrillville, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Today we are called upon to construe the provisions of Indiana Code sections 31–14–20–2 and 31–19–4–6 regarding a man's duty to register as a putative father.[1] Appellant-respondent Joshua J. Mathews, the alleged biological father of K.H., appeals the trial court's order entered in favor of the appellee-petitioner Adam C. Hansen regarding K.H.'s adoption. Specifically, Mathews urges that it was error to grant Hansen's motion to dismiss his challenge to the adoption decree entered by the trial court. Mathews raises a number of issues, arguing that the trial court erred when it: (1) determined that Mathews's failure to sign a putative father registry removed any requirement of notice of the adoption proceedings; (2) refused to hold that legal counsel to Debra Bidwell, the mother of K.H., should have notified Mathews's attorney that a default was being sought in the adoption proceedings; and (3) entered the adoption decree even though there had been no determination in a pending paternity action involving K.H. Notwithstanding the arguments that Mathews presents, we conclude that the circumstances here demonstrate that Mathews was time-barred from challenging the adoption decree because he failed to register as a putative father. Thus, we affirm the trial court's dismissal of Mathews's challenge to the adoption decree.

### FACTS

K.H. was born to Bidwell on October 10, 1995, and it was alleged that Mathews was

1. Indiana Code section 31–14–20–2 describes the resulting consequences and the effect on parental rights in adoption proceedings when a father fails to sign the paternity register:
(a) A man who fails to register with the putative father registry as required by section 1 of this chapter waives the right to notice of an adoption of a child who is the subject of the paternity action:

(1) if the adoption is filed before the man establishes paternity; and
(2) in which the child's mother does not disclose to an attorney or agency arranging the adoption the name or address of the child's putative father.
(b) A waiver under this section constitutes the man's irrevocably implied consent to the child's adoption.

the child's biological father.[2] Mathews, Bidwell and K.H. all lived together until June 1997, when Mathews was arrested for domestic battery. The trial court ultimately issued a no-contact order between Mathews and Bidwell. Thereafter, Mathews moved to California where his parents resided.

In August 1997, Bidwell initiated a paternity action. The court ordered that blood tests be conducted and that order was then sent to California. However, Mathews's paternity of K.H. was never established because the appropriate testing had not been completed. Neither party appeared for the final hearing that was scheduled for November 10, 1997. Thus, the court ordered that the matter be rescheduled only upon the written motion of either party.

On March 26, 1999, Hansen—Bidwell's current husband—petitioned to adopt K.H. Mathews was served with notice by publication on December 9, 2000, and he did not object. Following a hearing, the trial court decreed the adoption on January 31, 2001. It was determined that Mathews had been properly served by publication, that he had abandoned K.H. because he had not seen, supported or communicated with him for over one year prior to the date of filing, that the Lake County Department of Public Welfare did not know Mathews's whereabouts, that Mathews's parental rights were to be terminated, and that it was in the best interests of K.H. that the adoption be granted.

Thereafter, in January 2002, Mathews attempted to register with the Indiana Putative Fathers Registry. He subsequently filed a motion to vacate the judgment granting the adoption on August 19, 2002, pursuant to Indiana Trial Rule 60(B)(6), claiming that the judgment was void because of insufficient notice and fraudulent misrepresentations by Bidwell. More specifically, Mathews argued that the adoption decree was obtained by the misrepresentations of Hansen and Bidwell because they failed to alert the court that they knew, or had access to, Mathews' whereabouts and concealed it from the court. Mathews also argued that he was not properly served with notice and was, therefore, deprived of his rights of due process.

In response, Hansen filed a motion to dismiss Mathews's challenge to the adoption on September 9, 2002, claiming that Mathews's Motion to Vacate was time-barred under Indiana Code section 31–19–14–4, which precludes him from challenging the adoption decree even if notice of the adoption was not given to him "or the adoption proceedings were in any other manner defective." Appellant's App. p. 25. Thus, Hansen argued that Mathews's failure to register as a putative father amounted to an irrevocable implied consent to the adoption. Hansen also asserted that Mathews failed to demonstrate that he had a meritorious defense because Mathews never denied that he did not see, support or communicate with K.H. for over one year before the date that the adoption petition was filed.

On March 17, 2003, the trial court entered an order recognizing that "the putative father's statute is a substantive nonclaim statute." Thus, it concluded that

---

**2.** Mathews contends that had he been given the opportunity to present any evidence regarding the parties' relationship, the evidence would have demonstrated that he signed a paternity affidavit and was listed as K.H.'s father on the birth certificate. However, Mathews concedes that such evidence is not relevant or admissible if the trial court's ruling on the effect of the Putative Father's Registry statute is correct. Appellant's Br. p. 4, n. 2.

Mathews's failure to register under that statute in a timely manner precluded him from challenging the adoption. Mathews now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

The standard of review on appeal of a trial court's grant of a motion to dismiss for the failure to state a claim is de novo. *Sims v. Beamer,* 757 N.E.2d 1021, 1024 (Ind.Ct.App.2001). Thus, we do not defer to the trial court's decision because deciding a motion to dismiss based upon a failure to state a claim involves a pure question of law. *Id.* The grant or denial of a motion to dismiss turns only on the legal sufficiency of the claim and does not require determinations of fact. *Id.*

We begin our discussion by turning to Indiana Code section 31–19–14–2, the statute that prescribes the time for challenging an adoption decree:

Except as provided in section 3 of this chapter, if a person whose parental rights are terminated by the entry of an adoption decree challenges the adoption decree not more than the later of:

1) six (6) months after the entry of an adoptive decree; or

2) one (1) year after the adoptive parents obtain custody of the child;

the court shall sustain the adoption decree unless the person challenging the adoption decree establishes, by clear and convincing evidence, that modifying or setting aside the adoption decree is in the child's best interests.

A companion statute, Indiana Code section 31–19–14–4, mandates as follows:

After the expiration of the period described in section 2 of this chapter, a person whose parental rights are termi-

nated by the entry of an adoption decree may not challenge the adoption decree even if:

1) notice of the adoption was not given to the child's putative father; or

2) the adoption proceedings were in any other manner defective.

Inasmuch as the above operate as statutes of limitation, we note that such statutes are favored because they provide security against stale claims and promote the welfare and peace of society. *A.M. v. Roman Catholic Church,* 669 N.E.2d 1034, 1037 (Ind.Ct.App.1996), *trans. denied.* When the undisputed facts establish that a claim is filed after the running of the applicable statute of limitations, the court must enter judgment accordingly. *I.N.B. National Bank v. Moran Elec. Serv., Inc.,* 608 N.E.2d 702, 709 (Ind.Ct.App.1993), *trans. denied.* Furthermore, if the applicable statute of limitations has run, dismissal is appropriate. *See Monsanto Co. v. Miller,* 455 N.E.2d 392, 398 (Ind.Ct.App.1983).

We note that prior decisions by this court have suggested a rationale behind the legislative framework and the statutory preclusion of challenging adoption decrees if the challenge is not brought within the statutorily mandated timeframe. To be precise, it has been observed that children require early and consistent nurturing of their emotional as well as physical needs. *See Adoption of JDC,* 751 N.E.2d 747, 751 (Ind.Ct.App.2001). Thus, an unwed father must grasp at the opportunity to trigger protection under the law. *Id.*

This court has not yet been called upon to construe the effect of the time limits set forth in the above-quoted statutes. However, we have previously been confronted with a challenge to Indiana Code section 31–19–9–15, the non-

claim statute[3] that requires a putative father to file a paternity action within thirty days after receiving notice of the mother's intent to proceed with an adoptive placement of the child. *See In re Paternity of M.G.S.*, 756 N.E.2d 990, 1006 (Ind.Ct.App. 2001), *trans. denied.* That section provides that the putative father's consent to the adoption "is irrevocably implied without further court action" if he fails to comply with the thirty-day time limit. I.C. § 31–19–9–15. Moreover, such consent is implied regardless of whether the child is born before or after the expiration of the thirty-day time period. *Id.*

In *M.G.S.*, we determined, among other things, that the implied consent provisions set forth in our adoption statutes do not violate a father's constitutional right to due process. *M.G.S.*, 756 N.E.2d at 1006. This court noted that the father was given notice of the adoption and that he was adequately apprised of his obligation to file for paternity within thirty days in order to preserve his right to contest the adoption. *Id.* Inasmuch as the father failed to do so in *M.G.S.*—notwithstanding the notice that had been provided to him—we determined that he was not deprived of the opportunity to be heard. *Id.*

Also, in *Adoption of JDC*, we upheld the time limits set forth in the nonclaim putative father registry statute. In *JDC*, the natural father had not been provided with notice of the adoption proceedings. *Adoption of J.D.C.*, 751 N.E.2d at 751. Because the father had failed to preserve his rights by so registering, he surrendered his right to notice of the adoption proceedings. *Id.* Moreover, we observed that an inquiry of a putative father's whereabouts was not required due to the putative father's failure to register. *Id.* We recognized that the requirements regarding the registration of a putative father are necessary to advance the state's policy interests of establishing early and permanent placement of children into stable homes. *Id.*

■ Bearing the rationales of the above cases in mind, the record here shows that the decree regarding K.H.'s adoption was finalized on January 31, 2001. Appellant's App. p. 5–7. It is reasonable to infer that Hansen received custody of K.H. at least by the date that the adoption was finalized. It was not until August 16, 2002, that Mathews filed his motion to vacate the adoption. Like the natural father in *JDC*, Mathews failed to avail himself of the putative father's registry. To fall within the purview of the statute for challenging the adoption decree, Mathews was required to file the motion to vacate within six months after the adoption decree had been entered, or one year after the adop-

---

**3.** In essence, a nonclaim statute is one that creates a right of action and has inherent in it the denial of a right of action. It imposes a condition precedent—the time element that is part of the action itself. *Wawrinchak v. United States Steel Corp.*, 148 Ind.App. 444, 267 N.E.2d 395, 399 (1971). While nonclaim statutes limit the time in which a claim may be filed or an action brought, they have nothing in common and are not to be confused with general statutes of limitation. *Donnella v. Crady*, 135 Ind.App. 60, 63, 185 N.E.2d 623, 624 (1962), *trans. denied.* "The former creates a right of action if commenced within the time prescribed by the statute, whereas the latter creates a defense to an action brought after the expiration of the time allowed by law for the bringing of such an action." *Id.* Thus, a statute is a nonclaim statute when "there is clearly evidenced a legislative intent in [the] statute to not merely withhold the remedy, but to take away the right of recovery where a claimant fails to present his claim as provided in the statute." *Rising Sun State Bank v. Fessler*, 400 N.E.2d 1164, 1166 (Ind.Ct.App.1980). Moreover, while equitable principles may extend the time for commencing an action under statutes of limitations, nonclaim statutes impose a condition precedent to the enforcement of a right of action and are not subject to equitable exceptions. *See id.*

tive parents had obtained custody of K.H. Because Mathews failed to register in a timely fashion, he may not now challenge the adoption decree.

■ Additionally, while Mathews argues that he was not properly provided with notice of the intent to adopt K.H., the specific language of Indiana Code section 31–19–14–4 set forth above contradicts such a contention. That is, this statute specifically precludes Mathews from contesting the adoption decree, even if notice of the adoption had not been given to the child's putative father, whom Mathews alleges to be. Put another way, it is apparent that our legislature intentionally promulgated that an adoption decree could not be attacked on the basis of lack of notice after the time limitations have expired. Significantly, Indiana Code section 31–19–14–4 goes on to provide that challenges to adoptions beyond the statutory time frame are not permitted if the "adoption proceedings were in any other manner defective." Therefore, the statute operates to preclude Mathews's arguments that he presents here because the motion to vacate was filed over eighteen months after the entry of the decree of the adoption and beyond the one-year requirement with respect to Hansen's custody of K.H. To hold otherwise and permit Mathews to vacate the adoption decree in these circumstances would contravene the intended purpose and specific language of the applicable statute of limitations. As a result, we conclude that the trial court properly granted Hansen's motion to dismiss Mathews's challenge to the adoption.

Affirmed.

BROOK, C.J., and SHARPNACK, J., concur.