**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 12 2012, 9:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VINCENT S. TAYLOR**
Vince Taylor's Law Office
Bloomington, Indiana

ATTORNEY FOR APPELLEE:

**CARL PAUL LAMB**
Carl Lamb and Associates
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE ADOPTION )
OF J.W., )
                                     )
     T.McD. )
                                     )
     Appellant, )
                                     )
        vs. )     No. 53A04-1202-AD-78
                                     )
     G.C., )
                                     )
     Appellee. )

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Stephen R. Galvin, Judge
Cause No. 53C07-1007-AD-40

**September 12, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Appellant T.McD. appeals from the juvenile court's order denying his objection to and motion to vacate the Decree of Adoption of J.W. We affirm.

## FACTS AND PROCEDURAL HISTORY

A.C. ("Mother") gave birth to J.W. on March 16, 2007. T.McD. and Mother were engaged in a sexual relationship around the time that Mother became pregnant with J.W. Mother, however, was also engaging in sexual relationships with G.C. ("Adoptive Father") and several other men during this time. After becoming pregnant, Mother notified each of the men that they could potentially be J.W.'s biological father. T.McD. was present for J.W.'s birth. He did not, however, sign J.W.'s birth certificate or a paternity affidavit because he was not sure that he was J.W.'s biological father.[1] To date, T.McD. has failed to establish paternity or sign up for the Indiana Putative Father's Registry.

T.McD. visited with J.W. regularly for the first six to seven months of her life. At some point prior to J.W.'s first birthday, J.W. and Mother moved in with Adoptive Father. T.McD.'s contact with J.W. became less regular after this move. T.McD. claims that the reason for his diminished contact with J.W. was that he was "distraught" by the fact that J.W. and Mother had moved in with Adoptive Father, and, as a result, he was a "very broken man." Tr. p. 18. In March of 2008, T.McD. moved to Washington state. After moving away from Indiana, T.McD. occasionally called and emailed Mother to check on J.W.'s welfare.

---

[1] We note that T.McD. claims that when J.W. was one or two months old, he, Mother, and J.W. submitted to a paternity test and that the results led him to believe that he was J.W.'s biological father. Mother acknowledges that T.McD. verbally notified her of the results of the paternity test, but claims that T.McD. never showed her the results or provided her with a written copy of the results. Furthermore, the results of this paternity test were not admitted into evidence in the instant matter because T.McD. claimed that he could not locate the written results.

T.McD.'s last contact with J.W. occurred during a visit at a fast-food restaurant in January of 2009.

Adoptive Father filed a petition for the adoption of J.W. on July 9, 2010. In this petition, which was joined by Mother, Adoptive Father averred that: (1) he and Mother were married on May 8, 2010; (2) Mother consented to the adoption; (3) J.W.'s biological father was unknown; and (4) he had assumed responsibility for J.W.'s care, support, and education since her birth. The juvenile court conducted a hearing on Adoptive Father's petition on September 16, 2010, after which it entered a Decree of Adoption granting Adoptive Father's petition and terminating the parental rights of J.W.'s unknown biological father.

On April 13, 2011, T.McD. filed numerous motions, including a Verified Trial Rule 60 Motion to Vacate Judgment and Decree of Adoption, a Belated Objection and Cross Petition, and a Belated Trial Rule 12B Motion to Vacate and Dismiss. The juvenile court conducted a hearing on T.McD.'s motions on December 6, 2011, and issued an order denying each of the motions on January 17, 2012. This appeal follows.

## DISCUSSION AND DECISION

T.McD. contends that the juvenile court erred in denying his motions requesting that the juvenile court vacate the adoption decree. In making this contention, T.McD. argues that he was entitled to notice as a putative father. He also argues that as a matter of public policy, Adoptive Father and Mother should be found to have had a duty to disclose him as a potential father in the adoption petition rather than stating that J.W.'s biological father was unknown.

"The decision of whether to set aside a judgment is given substantial deference on

3

appeal." *In re Adoption of J.D.C.*, 751 N.E.2d 747, 748-49 (Ind. Ct. App. 2001) (citing *In re Paternity of Baby Doe*, 734 N.E.2d 281, 284 (Ind. Ct. App. 2000)). "[W]e review such a decision for an abuse of discretion, which only occurs where the trial court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief." *Id.* (citing *In re Paternity of Baby Doe*, 734 N.E.2d at 284).

In an effort to balance the competing interests involved in adoption proceedings, Indiana established the Putative Father's Registry in 1994. *Id.* The Putative Father's Registry is managed by the Indiana Department of Health. *Id.* (citing Ind. Code § 31-19-5-2). "The purpose of the registry is to provide notice to a putative father that a petition for adoption has been filed." *Id.* (citing *In re Paternity of Baby Doe*, 734 N.E.2d at 284); *see also* Ind. Code § 31-19-5-3. "A putative father who registers within thirty days after the child's birth *or* the date the adoption petition is filed, whichever occurs later, is entitled to notice of the child's adoption." *In re Adoption of J.D.C.*, 751 N.E.2d at 749 (citing Ind. Code §§ 31-19-5-4; -5; -12) (emphasis added).

A putative father is not entitled to notice of the adoption if: "(1) on or before the date the mother of a child executes a consent to the child's adoption, the mother does not disclose to the attorney or agency arranging the adoption the identity or address, or both, of the putative father; and (2) the putative father has not registered with the putative father registry under [Indiana Code chapter] 31-19-5 within the period under 31-19-5-12." *Id.* at 749-50 (quoting Indiana Code § 31-19-4-6). "A putative father's failure to register not only waives his right to notice of the adoption but also irrevocably implies his consent." *Id.* at 750 (citing

4

Ind. Code § 31-19-5-18). "Further, a putative father whose consent has been implied may not challenge the adoption or establish paternity." *Id.* (citing Ind. Code §§ 31-19-9-13, 31-19-9-14).

Here, it is undisputed that, although T.McD. was aware of Mother's pregnancy as well as the possibility that he was J.W.'s biological father, T.McD. did not register with the Putative Father's Registry. In failing to do so, T.McD. did not take any of the steps necessary to protect his rights as a putative father. Under Indiana law, T.McD.'s failure to register with the Putative Father's Registry results in the waiver of his right to notice of the adoption proceedings. *See id.* In addition, in light of his failure to register with the Putative Father's Registry, T.McD. has given his irrevocable implied consent to the adoption, and has waived his right to challenge the adoption proceedings. *See id.* As such, the juvenile court acted properly when it denied T.McD.'s request to vacate the adoption decree.

Furthermore, even if T.McD.'s failure to register as a putative father did not amount to implied consent of the adoption or a waiver of his right to challenge the adoption, we conclude that the juvenile court properly determined that T.McD.'s challenge to the adoption decree was time barred. Indiana Code section 31-19-14-2 (2010), the statute that prescribes the time for challenging an adoption decree provides as follows:

> Except as provided in section 3 of this chapter, if a person whose parental rights are terminated by the entry of an adoption decree challenges the adoption decree not more than the later of:
> (1) six (6) months after the entry of an adoption decree; or
> (2) one (1) year after the adoptive parents obtain custody of the child;
> the court shall sustain the adoption decree unless the person challenging the adoption decree establishes, by clear and convincing evidence, that modifying

5

or setting aside the adoption decree is in the child's best interests.

A companion statute, Indiana Code section 31-19-14-4 (2010), further provides:

> After the expiration of the period described in section 2 of this chapter, a person whose parental rights are terminated by the entry of an adoption decree may not challenge the adoption decree even if:
>    (1) notice of the adoption was not given to the child's putative father; or
>    (2) the adoption proceedings were in any other manner defective.

In light of the language of Indiana Code section 31-19-14-4, T.McD. is precluded from belatedly contesting the adoption decree, despite the alleged lack of notice of the adoption proceedings. "Put another way, it is apparent that our legislature intentionally promulgated that an adoption decree could not be attacked on the basis of lack of notice after the time limitations have expired." *Mathews v. Hansen*, 797 N.E.2d 1168, 1173 (Ind. Ct. App. 2003). As such, Indiana Code section 31-19-14-4 operates to preclude T.McD.'s challenge to the adoption decree because his motions to vacate were filed approximately seven months after the entry of the adoption decree and beyond the one-year requirement with respect to Adoptive Father's custody of J.W. To hold otherwise and permit T.McD. to vacate the adoption decree in these circumstances would contravene the intended purpose and specific language of the applicable statute of limitations. *See id.* As a result, we conclude that the trial court properly determined that T.McD.'s challenge to the adoption decree was time barred.[2] *See id.*

---

[2] Having concluded that T.McD. impliedly consented to the adoption by failing to sign the Putative Father's Registry and that, in any event, any challenge to the adoption decree was time barred pursuant to Indiana Code sections 31-19-14-2 and 31-19-14-4, we need not consider T.McD.'s public policy argument relating to whether a mother should be required to name all potential fathers in an adoption petition rather than

The judgment of the juvenile court is affirmed.

ROBB, C.J., and BAKER, J., concur.

---

stating that the biological father is unknown.