# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**RACHELE L. CUMMINS**
Smith Carpenter Thompson
Fondrisi & Cummins, LLC
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**JONI L. GRAYSON**
Jeffersonville, Indiana

FILED

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE PATERNITY OF G.W., | ) | |
| | ) | |
| J.W., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 22A01-1205-JP-234 |
| | ) | |
| R.M., | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE FLOYD CIRCUIT COURT
The Honorable J. Terrence Cody, Judge
Cause No. 22C01-1112-JP-150

**February 27, 2013**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Respondent, J.W. (Mother), appeals the trial court's decision to deny her two motions to dismiss the paternity action commenced by Appellee-Petitioner, R.M. We reverse.

## ISSUES

Mother raises two issues on appeal, which we restate as follows:

(1) Whether the trial court erred when it denied Mother's motion to dismiss R.M's paternity action; and

(2) Whether the trial court erred when it denied Mother's motion, as G.W.'s next friend, to voluntarily dismiss the paternity action.

## FACTS AND PROCEDURAL HISTORY

G.W. was born on July 27, 2010 to Mother. Prior to Mother's pregnancy with G.W., she was in a relationship with R.M., who claims to be the minor child's biological father. R.M. was never married to Mother, he did not sign G.W.'s birth certificate or paternity affidavit, and did not register with the putative father registry. R.M. knew about Mother's pregnancy, he attended doctor appointments with Mother, and was present during G.W.'s birth. After G.W. was born, R.M. saw the minor child regularly until April of 2011, when Mother stopped all visitation.

Six months into her pregnancy with G.W., Mother started dating J.U., her current husband. Mother and J.U. married on July 12, 2011 and on August 22, 2011, he filed a petition to adopt G.W., to which Mother consented, in the Floyd Circuit Court. Although

2

R.M. was named in the adoption petition as "the biological father," and a search of the putative father registry was conducted, R.M. did not receive notice of the proceedings. (Appellant's App. p. 9).

On August 10, 2011, twelve days prior to the filing of the adoption petition, R.M. signed a petition to establish paternity at the Clark County prosecutor's office. It was not until four days after the adoption petition was filed, on August 26, 2011, that the State of Indiana, as G.W.'s next friend, actually filed the verified complaint to establish paternity and support in the Clark Circuit Court. On September 16, 2012, Mother filed a motion to dismiss the paternity action.[1] On September 21, 2011, R.M. filed a response and cross-petition in the paternity action in the Clark Circuit court, as well as a motion contesting the adoption in the Floyd Circuit Court. On November 4, 2011, the paternity action and adoption proceeding were consolidated in the Floyd Circuit Court and the State withdrew its appearance in the paternity action. On January 12, 2012, Mother, as G.W.'s next friend, filed a motion to voluntarily dismiss the complaint to establish paternity and support. On April 30, 2012, after conducting an evidentiary hearing on Mother's two motions to dismiss, the trial court stated: "[t]he [m]otions to [d]imiss the [p]etition to [e]stablish [p]aternity which were filed by [Mother] as custodial party/oblige and as next friend of [G.W.] be and the same are hereby denied." (Appellant's App. p. 6). In the same decision, the trial court certified its order for interlocutory appeal, which this court accepted.

---

[1] The Clark Circuit Court granted this motion on September 20, 2011 but vacated its order on October 12, 2011.

Mother now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Mother contends that the trial court erred when it denied her two motions to dismiss the paternity action—the motion to dismiss the paternity action, filed on September 16 and the motion, as G.W.'s next friend, to voluntarily dismiss the paternity action. Although the two motions are phrased differently and represent distinct legal mechanisms, they both aim to prevent R.M. from establishing his paternity to the minor child. Mother's motion to dismiss, originally filed in Clark Circuit Court, asserts that because R.M. failed to timely register with the putative father registry, sign the birth certificate, or timely file a paternity action, he implicitly consented to the adoption and is barred from seeking paternity to the minor child as he no longer has standing to bring the claim. Subsequently, in her motion to voluntarily dismiss, Mother, as G.W.'s next friend, asserts that because R.M. has no standing to establish paternity, he is also barred to seek paternity by filing as next of friend.

### I. *Motion to Dismiss for Lack of Standing*

Mother brought her initial motion to dismiss under the province of Indiana Trial Rule 12(B)(6), failure to state a claim, as well as pursuant to the claim that R.M. lacks standing. Motions to dismiss for lack of standing may be brought under Trial Rule 12(B)(6) for failure to state a claim on which relief can be granted. *Thomas v. Blackford Co. Area Bd. of Zoning Appeals*, 907 N.E.2d 988, 990 (Ind. 2009). If the motion is presented under Rule 12(B)(6), the allegations of the complaint are required to be taken as true. *Id*. A successful 12(B)(6) motion alleging lack of standing requires that the lack

4

of standing be apparent on the face of the complaint. *Id.* However, if on a 12(B)(6) motion matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Ind. T.R. 56 *See* T.R. 12. In this case, the trial court conducted an evidentiary hearing and both parties tendered briefs in support of their respective positions. As such, we shall proceed under the summary judgment standard of review.

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). "A fact is material if its resolution would affect the outcome of the case, and an issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth . . ., or if the undisputed facts support conflicting reasonable inferences." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009). In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id.* at 607-08.

Mother's main contention alleges that because R.M. failed to register with the putative father registry, did not sign G.W.'s birth certificate or a paternity affidavit, he is now precluded from establishing paternity and contesting the adoption. In fact, Mother asserts that because R.M. failed to take timely action, he implicitly consented to the adoption of the minor child and waived any notice of the adoption proceedings. On the

5

other hand, acknowledging that he never registered, R.M. nevertheless argues that the provisions of the putative father registry are not applicable to him because Mother disclosed his name to her attorney and a search of the putative father registry was conducted.

Indiana established the Indiana Putative Father's Registry in 1994, which is managed by the Indiana Department of Health. I.C. §31-19-5-2. The statute governing the putative father's registry imposes registration requirements on putative fathers who wish to contest their child's adoption or those who petition for paternity while an adoption proceeding is pending. *See In re Adoption of J.D.C.,* 751 N.E.2d 747, 749 (Ind. Ct. App. 2001). Specifically, Indiana Code section 31-19-5-1 (emphasis added) provides

> Application of Chapter
> Sec. 1 (a) This chapter applies to a putative father whenever:
>> (1) an adoption under [I.C. ch.] 31-19-2 has been or may be filed regarding a child who may have been conceived by the putative father; and
>>
>> (2) on or before the date the child's mother executes a consent to the child's adoption, the child's mother has not disclosed the name *or* address, or both, of the putative father to the attorney or agency that is arranging the child's adoption.
>
> (b) This chapter does not apply if, on or before the date the child's mother executes a consent to the child's adoption, the child's mother discloses the name *and* address of the putative father to the attorney or agency that is arranging the child's adoption.

A putative father who registers within thirty days after the child's birth or the date the adoption petition is filed, whichever occurs later, is entitled to notice of the child's adoption. *See* I.C. § 31-19-5-4; -12. If, on or before the date the mother of a child

6

executes a consent to adoption, she does not disclose to the attorney or agency that is arranging the adoption, the name *or* address, or both, of the putative father of the child, the putative father must register under this chapter to entitle him to notice of the child's adoption. I.C. § 31-19-5-5. Statutorily, the repercussions of failing to register with the putative father registry are far-reaching. Not only does the putative father forego notice of the adoption proceeding, but "[t]he putative father's waiver under this section constitutes an irrevocably implied consent to the child's adoption." I.C. § 31-19-5-18.

Moreover, the requirement that the putative father registers within a certain time limit, is not solely mandated in adoption proceedings but carries its mirror consequences into the paternity proceedings. In particular, "[a] man who files or is party to a paternity action shall register with the putative father registry under [I.C. Ch] 31-19-5." I.C. § 31-14-5-7. Likewise, "a man who is barred under [I.C.] 31-19 from establishing paternity may not establish paternity by: (1) filing a paternity action as next of friend of a child; or (2) requesting a prosecuting attorney to file a paternity action." I.C. § 31-14-5-9.

The evidence reflects that although Mother disclosed R.M.'s name to the attorney arranging the adoption of G.W. by her husband, she never divulged R.M.'s address. Because both the name and address have to be revealed to fall outside the application of the putative father registry, we find that the provisions of the registry are applicable to R.M. *See* I.C. § 31-19-5-1. As R.M. acknowledges that he never registered, we must necessarily conclude that he is not entitled to notice of the adoption proceeding, and has irrevocably and implicitly consented to the adoption of his minor child to J.U.

7

Our conclusion today is supported by Indiana's strong interest in providing stable homes for children, as "early and permanent placement of children with adoptive families is of the utmost importance." *In re Paternity of Baby Doe*, 734 N.E.2d 281, 287 (Ind. Ct. App. 2000). If a father fails to register within the specified amount of time allowed under the statute, then "the State's obligation to provide this child with a permanent, capable and loving family becomes paramount." *Id.* Moreover, other jurisdictions have similarly concluded that a putative father who fails to register with the putative father's registry has waived his right to notice of adoption proceedings and impliedly consents to the adoption. In *Baby Doe*, this court relied on *Robert O v. Russell K.*, 80 N.Y.2d 254, 590 (N.Y. Ct. App. 1992) where the New York Court of Appeals concluded that although the putative father was not immediately aware of the child, not only due to his lack of effort to discover the child but also because of the biological mother's efforts to keep him from knowing about the child,

> [p]romptness is measured in terms of the baby's life not by the onset of the father's awareness. The demand for prompt action by the father at the child's birth is neither arbitrary nor punitive, but instead a logical and necessary outgrowth of the State's legitimate interest in the child's need for early permanence and stability.

*Baby Doe*, 734 N.E.2d at 286-87.

Thus, as R.M. failed to timely register with the putative father registry, he has impliedly consented to the adoption of his minor child and is now barred from establishing paternity. *See* I.C. § 31-14-5-7. Thus, the trial court erred in denying Mother's motion to dismiss the paternity action.

II. *Mother's Motion as G.W.'s Next Friend*

8

Repeating the argument supporting her motion to dismiss R.M's paternity action, Mother asserts that R.M. "cannot serve as [G.W.'s] Next Friend." (Appellant's br. p. 16). We agree. Pursuant to I.C. 31-14-5-9, "a man who is barred under [I.C.] 31-19 from establishing paternity may not establish paternity by: (1) filing a paternity action as next of friend of a child; or (2) requesting a prosecuting attorney to file a paternity action." Therefore, the trial court erred in denying Mother's motion as next of friend.

## CONCLUSION

Based on the foregoing, we conclude that the trial court erred in denying Mother's motions to dismiss R.W.'s paternity action.

Reversed.

BAKER, J. and BARNES, J. concur

9