**FOR PUBLICATION**



ATTORNEYS FOR APPELLANT:

**WILLIAM A. RAMSEY**
Murphy Ice LLP
Fort Wayne, Indiana

**CYNTHIA G. HARMON**
Flora, Indiana

ATTORNEY FOR APPELLEES:

**RICHARD D. MARTIN**
Frankfort, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION | ) | |
| AND PATERNITY OF K.G.B., | ) | |
| | ) | |
| E.S., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 12A02-1404-AD-255 |
| | ) | |
| T.B. and K.B., | ) | |
| | ) | |
| Appellees-Petitioners. | ) | |

APPEAL FROM THE CLINTON CIRCUIT COURT
The Honorable Thomas R. Lett, Special Judge
Cause No. 12C01-1308-AD-13

**September 26, 2014**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

On August 22, 2012, Appellee-Petitioner K.B. ("Mother") gave birth to K.G.B. (the "Child") out-of-wedlock. Paternity of the Child was not established at the time of the Child's birth. Approximately one year later, Mother consented to the adoption of the Child by Mother's father, Appellee-Petitioner T.B., so long as Mother retained her maternal rights to the Child. Soon thereafter, T.B. filed a petition seeking to adopt the Child. A search of Indiana's Putative Father Registry (the "Registry") did not reveal any registered putative fathers of the Child or indication that paternity of the Child had been established. Approximately one-and-one-half months after T.B. filed the adoption petition, Appellant-Respondent E.S. ("Putative Father") filed a petition seeking to establish paternity of the Child ("paternity petition") and a motion to contest the adoption of the Child by T.B. ("motion contesting the adoption"). In contesting the adoption, Putative Father acknowledged that he had failed to timely register with the Registry.

After Putative Father filed his paternity petition and motion contesting the adoption, T.B. filed a motion to strike Putative Father's motion contesting the adoption. Mother requested that the adoption and paternity cases be consolidated, a request which was subsequently granted by the trial court. Mother also filed a motion to dismiss Putative Father's paternity petition. Following a hearing on T.B.'s and Mother's (collectively, "the Appellees") pending motions, the trial court granted T.B.'s motion to strike Putative Father's motion contesting the adoption and Mother's motion to dismiss Putative Father's paternity

petition. Putative Father argues on appeal that the trial court erroneously granted these motions.

Upon review, we conclude that pursuant to Indiana Code chapter 31-19-5, which relates to a putative father's rights and obligations regarding the Registry, Putative Father was not entitled to notice of the adoption proceedings because he failed to timely register with the Registry, and his failure to timely register amounted to an irrevocably implied consent to the Child's adoption. We further conclude that because Putative Father has impliedly consented to the adoption of the Child, he is also barred from establishing paternity of the Child. Accordingly, we affirm the judgment of the trial court and remand the matter for any additional necessary proceedings relating to T.B.'s adoption of the Child.

## FACTS AND PROCEDURAL HISTORY[1]

On August 22, 2012, Mother gave birth to the Child out-of-wedlock. Paternity of the Child was not established at the time of the Child's birth. Nearly one year later, on August 20, 2013, Mother filed a request with the Registry, which is run by the Indiana Department of Health (the "DOH"), to conduct a search of the Registry for any registered putative father of the Child. The search revealed that no putative father of the Child was registered and that no paternity determination was on file with the DOH. The DOH employee responsible for the administration of the Registry issued an affidavit revealing the above results on August 23,

---

[1] We note that Appellant has filed a motion to strike and for leave to file an amended brief. With respect to the motion to strike, Appellant acknowledges that he included a document on page 34 of his Appendix that was not properly part of the record on appeal. With respect to the motion for leave to file an amended brief, Appellant requests permission to file an amended brief that omits a single reference to the improperly included document in his appellate brief. Having reviewed Appellant's motion, we grant Appellant's request to strike page 34 of Appellant's Appendix and deny Appellant's request for leave to file an amended brief in an order issued simultaneously with this opinion.

2013.

On August 27, 2013, the Child's maternal grandfather, T.B., filed a petition to adopt the Child. T.B.'s petition was accompanied by a consent to the adoption that was executed by Mother on August 22, 2013. Pursuant to the terms of Mother's consent, Mother would retain her maternal rights to the Child and would share parental rights and obligations relating to the Child with T.B.

On August 29, 2013, T.B. filed a motion for a change of judge. T.B.'s motion was joined by Mother and alleged that pursuant to T.B.'s knowledge and information, the trial judge to whom the adoption matter was assigned had potentially communicated with an individual who thought that he may be the Child's father while the trial judge was still at his private practice. The trial court subsequently granted T.B.'s motion requesting a change of judge.

On September 9, 2013, T.B., filed an amended petition for the adoption of the Child. T.B.'s amended petition added statements indicating that a search of the Registry revealed that paternity of the Child had not been established and that no putative father was listed on the Registry. The amended petition was again accompanied by a document indicating that Mother consented to the adoption. T.B.'s amended petition was also accompanied by the affidavit of the DOH employee responsible for the administration of the Registry outlining the results of the employee's search of the Registry, which again revealed that no putative father of the Child was registered and that no paternity determination was on file with the DOH.

4

On October 9, 2013, Putative Father filed the paternity petition through which he sought to establish paternity and resolve issues relating to custody, parenting time, and obligations by Putative Father to support the Child. Two days later, on October 11, 2013, Putative Father filed a motion contesting the adoption of the Child by T.B. In this motion, Putative Father acknowledged that he had not properly registered with the Registry, but argued that he nonetheless should have been notified of the pending adoption proceedings.

On October 22, 2013, T.B. filed a motion to strike Putative Father's motion contesting the adoption. In support, T.B. argued that Putative Father was not entitled to notice of the adoption proceedings because he failed to timely register with the Registry and, as a result, had irrevocably and implicitly consented to the adoption of the Child. Also on October 22, 2013, Mother filed a motion to dismiss Putative Father's paternity action. In support, Mother argued that Putative Father did not have standing to bring the paternity action because he failed to timely register with the Registry. Mother also argued that the paternity action should be dismissed because Putative Father failed to join a necessary party to the action, *i.e.*, the Child. Mother requested that the trial court consolidate the adoption and paternity proceedings, a request which was granted by the trial court on November 15, 2013.

On December 19, 2013, the trial court conducted a hearing on the pending motions. During the hearing, counsel for Putative Father conceded that Putative Father had not timely registered with the Registry. At the conclusion of the hearing, the trial court gave the parties until January 10, 2014, to file any supplemental written post-hearing materials that the parties deemed necessary. On January 10, 2014, counsel for T.B. and Mother filed proposed orders

5

granting Mother's motion to dismiss the paternity action and T.B.'s motion to strike Putative Father's motion contesting the adoption. On January 14, 2014, the trial court issued an order granting Mother's motion to dismiss. Also on January 14, 2014, the trial court issued an order granting T.B.'s motion to strike Putative Father's motion contesting the adoption.

On January 15, 2014, Putative Father filed an amended paternity petition. Putative Father styled the amended paternity petition as being brought "as next friend for" the Child. Appellant's App. pp. 56-57. Also on January 15, 2014, Putative Father filed a brief in support of his argument against T.B.'s motion to strike Putative Father's motion contesting the adoption and Mother's motion to dismiss the paternity action.[2]

On February 13, 2014, Putative Father filed a motion to correct error. Putative Father's motion to correct error was subsequently denied by the trial court. This appeal follows.

## DISCUSSION AND DECISION

### I. Standard of Review

Putative Father appeals from the trial court's denial of his motion to correct error. "Rulings on motions to correct error are typically reviewable under an abuse of discretion standard." *Boyd v. WHTIV, Inc.*, 997 N.E.2d 1108, 1110 (Ind. Ct. App. 2013), *reh'g denied*. Under these circumstances, we reverse "only where the trial court's judgment is clearly against the logic and effect of the facts and circumstances before it or where the trial court errs on a matter of law." *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013) (citing

---

[2] This filing appears to be untimely as the trial court granted the parties only until January 10, 2014, to file any supplemental written post-hearing materials.

*Hawkins v. Cannon*, 826 N.E.2d 658, 663 (Ind. Ct. App. 2005), *trans. denied*).  However,

"we review the matter de novo when the issue on appeal is purely a question of law." *Boyd*,

997 N.E.2d at 1110.

## II.  Overview of the Putative Father Registry

Indiana established the Registry in 1994.  *In re Paternity of G.W.*, 983 N.E.2d 1193,

1196 (Ind. Ct. App. 2013), *reh'g denied*. The Registry is managed by the DOH.  Ind. Code §

31-19-5-2.  "The purpose of the registry is to provide notice to a putative father that a petition

for adoption has been filed."  *In re Adoption of J.D.C.*, 751 N.E.2d 747, 749 (Ind. Ct. App.

2001) (citing *In re Paternity of Baby Doe*, 734 N.E.2d 281, 284 (Ind. Ct. App. 2000)); *see*

*also* Ind. Code § 31-19-5-3.  The statutory authority governing the Registry

> applies to a putative father whenever (1) an adoption under IC 31-19-2 has
> been or may be filed regarding a child who may have been conceived by the
> putative father; and (2) on or before the date the child's mother executes a
> consent to the child's adoption, the child's mother has not disclosed the name
> or address, or both, of the putative father to the attorney or agency that is
> arranging the child's adoption.

Ind. Code § 31-19-5-1(a).  However, the statutory authority governing the Registry "does not

apply if, on or before the date the child's mother executes a consent to the child's adoption,

the child's mother discloses the name and address of the putative father to the attorney or

agency that is arranging the child's adoption."  Ind. Code § 31-19-5-1(b).

A putative father who registers with the Registry in accordance with Indiana Code

chapter 31-19-5 "is entitled to notice of the child's adoption under Rule 4.1 of the Indiana

Rules of Trial Procedure."  Ind. Code § 31-19-5-4.  However,

> [i]f, on or before the date the mother of a child executes a consent to the

7

child's adoption, the mother does not disclose to an attorney or agency that:
    (1) is arranging; or
    (2) may arrange;
an adoption of the child the name or address, or both, of the putative father of the child, the putative father *must* register under this [Indiana Code chapter 31-19-5] to entitle the putative father to notice of the child's adoption.

Ind. Code § 31-19-5-5 (emphasis added). Further, the filing of a paternity action by a putative father "does not relieve the putative father from the: (1) obligation of registering; or (2) consequences of failing to register; in accordance with [Indiana Code chapter 31-19-5] unless paternity has been established before the filing of the petition for adoption of the child." Ind. Code § 31-19-5-6.

In order to be entitled to notice of an adoption, a putative father must register with the DOH not later than "(1) thirty (30) days after the child's birth; or (2) the earlier of the date of the filing of a petition for the: (A) child's adoption; or (B) termination of the parent-child relationship between the child and the child's mother; whichever occurs later." Ind. Code § 31-19-5-12(a). A putative father may also register with the DOH prior to the child's birth. Ind. Code § 31-19-5-12(b). "A putative father who fails to register within the period specified by [Indiana Code section 31-19-5-12] waives notice of an adoption proceeding. The putative father's waiver under this section *constitutes an irrevocably implied consent to the child's adoption*." Ind. Code § 31-19-5-18 (emphasis added). "[A] putative father whose consent has been implied may not challenge the adoption or establish paternity." *In re Adoption of J.D.C.*, 751 N.E.2d at 750; *see also In re Paternity of Baby Doe*, 734 N.E.2d at 285; Indiana Code §§ 31-19-9-13, 31-19-9-14.

### III. Whether the Trial Court Abused Its Discretion in Striking

**Putative Father's Motion Contesting the Adoption**

**A. Trial Court Determination that the Statutes Relating to
Implied Consent of Adoption Applied to Putative Father**

Putative Father contends that the trial court abused its discretion in granting T.B.'s motion to strike Putative Father's motion contesting the adoption. "A trial court is vested with broad discretion in ruling on a motion to strike." *In re Adoption of Infant Female Fitz*, 778 N.E.2d 432, 436 (Ind. Ct. App. 2002) (citing *In Re Estate of Meyer*, 747 N.E.2d 1159, 1164 (Ind. Ct. App. 2001), *trans. denied*). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances supporting the judgment for relief." *Id.* (citing *Lake Cnty. Trust No. 3190 v. Highland Plan Comm'n*, 674 N.E.2d 626, 628 (Ind. Ct. App. 1996), *trans. denied*).

Putative Father argues that the trial court abused its discretion in granting T.B.'s motion to strike Putative Father's motion contesting the adoption because the trial court erroneously determined that the statutes relating to implied consent for failure to register with the Registry applied to Putative Father. Again, "[a] putative father who registers within thirty days after the child's birth or the date the adoption petition is filed, whichever occurs later, is entitled to notice of the child's adoption." *In re Paternity of G.W.*, 983 N.E.2d at 1197 (citing Ind. Code §§ 31-19-5-4; 31-19-5-12).

> If, on or before the date the mother of a child executes a consent to adoption, she does not disclose to the attorney or agency that is arranging the adoption, the name or address, or both, of the putative father of the child, the putative father *must* register under this chapter to entitle him to notice of the child's adoption. [Ind. Code § 31-19-5-5]. Statutorily, the repercussions of failing to register with the putative father registry are far-reaching. Not only does the putative father forego notice of the adoption proceeding, but "[t]he putative

9

father's waiver under this section constitutes an irrevocably implied consent to the child's adoption." I.C. § 31-19-5-18.

*Id*. (emphasis added). A putative father whose consent to adoption is implied may not challenge the adoption or establish paternity. Ind. Code §§ 31-19-9-13, 31-19-9-14.

In the instant matter, Putative Father acknowledges that he failed to register with the Registry within thirty days of the Child's birth or by the date that T.B. filed the adoption petition.[3] Putative Father argues, however, that he was entitled to notice of the adoption proceedings because circumstantial evidence suggests that Mother disclosed his name or address to the attorney that was arranging the adoption on or before the date that she executed her consent to the adoption. In support, Putative Father points to T.B.'s August 29, 2013 motion for a change of judge, in which T.B. alleged that pursuant to his knowledge, the trial judge to whom the case was initially assigned had communicated with an individual who believed that he might be the Child's father while still in private practice.

Putative Father argues that he is the individual that T.B. was referring to in his motion for a change of judge. However, nothing in the record indicates that Putative Father was the individual that T.B. was referring to in his motion for a change of judge. Further, even assuming that Mother did disclose Putative Father's name or address as a possible putative father of the Child, nothing in the record indicates that she did so on or before August 22, 2013, the date when she first executed a written consent to the adoption of the Child by T.B. As such, we conclude that the record is insufficient to sustain a reasonable inference that

---

[3] Although Putative Father did eventually register with the Registry, it is undisputed that he did not do so until well after the time limits set forth in Indiana Code section 31-19-5-12 had run.

10

Mother disclosed Putative Father's identity as a potential putative father of the Child on or before the date she consented to the adoption. As such, Putative Father was only entitled to notice of T.B.'s adoption of the Child if he timely registered with the Registry. Again, Putative Father has acknowledged that he did not do so.

Thus, as Putative Father has failed to timely register with the Registry, Putative Father has waived his right to notice of and has impliedly consented to the adoption of the Child. *See* Ind. Code § 31-19-5-18. This implied consent is irrevocable and, as a result, Putative Father is now barred from contesting the adoption of the Child by T.B.[4] *See In re Paternity of G.W.*, 983 N.E.2d at 1198; *In re Adoption of Infant Female Fitz*, 778 N.E.2d at 438; *In re Adoption of J.D.C.*, 751 N.E.2d at 750; Ind. Code § 31-19-9-13.

### B. Constitutional Challenge to Statues Relating to the Registry

Putative Father also contends that the above-discussed statutory scheme relating to the obligations and rights of a putative father are unconstitutional. Specifically, Putative Father argues that the challenged statutes should be found to be unconstitutional because they violate his due process rights under both the United States and Indiana Constitutions.

> Our standard of review for alleged [constitutional violations] is well established. Every statute stands before us clothed with the presumption of constitutionality until clearly overcome by a contrary showing. The party challenging the constitutionality of the statute bears the burden of proof, and all doubts are resolved against that party. If two reasonable interpretations of a statute are available, one of which is constitutional and the other not, we will choose that path which permits upholding the statute because we will not presume that the legislature violated the constitution unless the unambiguous

---

[4] Further, we are unconvinced by Putative Father's unsupported apparent assertion that the statutory scheme relating to the Registry should not be applied to the instant matter merely because T.B. is the Child's maternal grandfather.

11

language of the statute requires that conclusion.

*State Bd. of Tax Comm'rs v. Town of St. John*, 702 N.E.2d 1034, 1037 (Ind. 1998) (internal citations omitted).

In raising this claim, Putative Father acknowledges that the challenged statutes have been found to be constitutional on their face, but argues that the challenged statutes should be found to be unconstitutional as applied to him.

> A facial challenge to the constitutionality of a statute requires that the party claiming the unconstitutionality of the statute "demonstrate that there are no set of circumstances under which the statute can be constitutionally applied," whereas a challenge to the constitutionality of a statute as applied asks the reviewing court only to "declare the challenged statute or regulation unconstitutional on the facts of the particular case." *Harris v. State,* 985 N.E.2d 767, 774 (Ind. Ct. App. 2013), *trans. denied.*

*Hazelwood v. State*, 3 N.E.3d 39, 40 (Ind. Ct. App. 2014).

Our review of the record indicates that Putative Father has failed to meet his burden of proving that the challenged statutes are unconstitutional as applied to him because he has failed to demonstrate on appeal how his due process rights, as set forth in the United States and Indiana Constitutions, were violated. In his appellate brief, Putative Father refers to the well-established principle that a parent-child relationship is "'one of the most valued relationships in our culture.'" *See Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005) (quoting *Neal v. DeKalb Cnty. Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003)). Putative Father further refers to the principle, recognized by both the United States Supreme Court and the Indiana Supreme Court, that "[a] parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the

12

fundamental liberty interests.'" *Id*. (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)).

While Putative Father correctly asserts that these general principles are well-established in both the federal and state contexts, Putative Father also correctly acknowledges that the United States Supreme Court has specifically held that states may limit the rights of putative fathers without violating the above-stated principles.

The United States Supreme Court clarified the rights of putative fathers in *Lehr v. Robertson*, 463 U.S. 248 (1983). As we have previously explained, in *Lehr*,

> the Court held that a putative father was not entitled to notice of adoption proceedings although his existence and whereabouts were known because he failed to establish a substantial relationship with the child. [*Lehr*, 463 U.S. at 265]. The putative father did not preserve his rights in the putative father's registry, was neither present at the birth nor visited the child in the hospital, was not listed as the father on the birth certificate, did not live with the child's mother after the birth, and provided no financial support to the child. One month after the adoption of the child became final, the putative father filed a petition asking for a determination of paternity, support, and visitation.
> The Court concluded that a mere biological link between the putative father and the child does not require a State to listen to his opinion regarding the child's best interests unless that putative father takes advantage of the biological connection by forming a relationship with that child. [*Id*. at 262]. For an unmarried father, the Court noted, statutes have been enacted to protect his rights to assume a responsible role in the child's life. [*Id*. at 263]. The Court upheld this statutory scheme as procedurally adequate because it provides a means of protecting one's rights as a father by mailing in a postcard to the putative father's registry. [*Id*. at 264]. Further, the Court articulated that ignorance of the putative father's registry was not a sufficient reason to criticize it. *Id*. The Court emphasized:
> > The legitimate state interests in facilitating the adoption of young children and having the adoption proceeding completed expeditiously that underlie the entire statutory scheme also justify a trial judge's determination to require all interested parties to adhere precisely to the procedural requirements of the statute. The Constitution does not require either a trial judge or a litigant to give special notice to nonparties who are presumptively capable of asserting and protecting their own

13

rights.

> [*Id*. at 265] (comparing the idea that a trial judge or a litigant provide special notice to a putative father when the father is capable of asserting and protecting his own rights to a defendant giving advice to a plaintiff when the statute of limitations is about to expire. *Id*. n. 23). The Court stated, "[t]he actions of judges neither create nor sever genetic bonds." [*Id*. at 261].

*In re Adoption of J.D.C.*, 751 N.E.2d at 749.

Putative Father argues that pursuant to *Lehr*, a putative father has a constitutionally protected opportunity to participate in his child's life, and if the putative father takes advantage of this opportunity, he receives substantial protection under the Due Process Clause. However, in the instant matter, similar to the situation presented in *Lehr*, Putative Father has failed to demonstrate that he established a substantial relationship with the Child or took any action to take advantage of any opportunity to participate in the Child's life before or even within thirty days after T.B. filed his petition to adopt the Child. Further, to the extent that Putative Father blames his failure to participate in the Child's life or attempt to establish paternity prior to the filing of T.B.'s adoption petition on unspecified actions by Mother, this court has previously noted, with approval, that other courts from sister states have placed the responsibility for promptly asserting parental rights on the putative father, even when the mother of the child has attempted to prevent the putative father's knowledge of or contact with the child. *See In re Paternity of Baby Doe*, 734 N.E.2d at 285 (citing *Matter of Baby Boy K.*, 546 N.W.2d 86, 101 (S.D. 1996); *Robert O v. Russell K.*, 604 N.E.2d 99, 103-04 (N.Y. 1992); *Matter of Adoption of S.T.B.*, 745 S.W.2d 606, 607 (Ark. 1988)).[5]

---

[5] We note that Putative Father also cites to the United States Supreme Court opinions in *Stanley v. Illinois*, 405 U.S. 645 (1972), *Quilloin v. Walcott*, 434 U.S. 246 (1978), and *Caban v. Mohammed*, 441 U.S. 380 (1979), in his appellate brief. However, Putative Father's reliance on these cases is misplaced as each of

14

Furthermore, it is well-established that Indiana has a strong interest in providing stable homes for children. *In re Paternity of Baby Doe*, 734 N.E.2d at 287 (citing *B.G. v. H.S.*, 509 N.E.2d 214, 217 (Ind. Ct. App. 1987)); *see also In re Adoption of J.D.C.*, 751 N.E.2d at 750.

> To this end, early, permanent placement of children with adoptive families furthers the interest of both the child and the state. [*B.G.*, 509 N.E.2d at 217.] If a putative father fails to register with the Registry within 30 days of the child's birth or the date of the filing of the petition for the child's adoption, whichever occurs later, the State's obligation to provide this child with a permanent, capable and loving family becomes paramount.

*In re Paternity of Baby Doe*, 734 N.E.2d at 287.

Again, Putative Father has failed to demonstrate on appeal how his due process rights were violated under either the United States or Indiana Constitutions. Accordingly, we must conclude that Putative Father has failed to meet his burden of proving that the challenged statutes are unconstitutional as applied to him. Putative Father's claim in this regard therefore must fail.[6]

## IV.  Whether the Trial Court Erred in Dismissing Putative Father's Paternity Action

Putative Father also contends that the trial court erred in dismissing his paternity

---

these cases is easily distinguishable. Unlike the instant matter, in *Stanley*, the Supreme Court considered the rights of a biological father who had lived with his children throughout their entire lives and had lived with the children's mother for eighteen consecutive years. 405 U.S. at 646. In *Quilloin*, the Supreme Court noted that while the biological father had never exercised actual or legal custody over the child or shouldered any significant responsibility with respect to daily supervision of the child, the biological father was afforded a full hearing and was given the opportunity to present evidence on any matter he thought relevant, including his fitness as a parent. 434 U.S. at 253, 256. In *Caban*, the Supreme Court held that procedural due process was not an issue because the biological father, who had lived with and provided financial support for the children, was given an opportunity to participate in the adoption proceedings. 441 U.S. at 382, 385 n.3.

[6] Putative Father also argues that the Child had a significant interest in establishing a relationship with her biological father. While this might be true, Putative Father failed to explain how this fact affected the alleged violation of his due process rights under either the United States or Indiana Constitutions.

15

action. On October 22, 2013, Mother filed a motion to dismiss the paternity action. Because Mother's petition referred to matters outside the pleadings, the trial court treated Mother's motion as a motion for summary judgment. See Trial Rule 12(B) (providing that a motion to dismiss should be treated as a motion for summary judgment when matters outside the pleadings are presented to and not excluded by the court).

> Our standard of review for summary judgment appeals is well established:
>> When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.
>
> *Dreaded, Inc. v. St. Paul Guardian Ins. Co.*, 904 N.E.2d 1267, 1269-70 (Ind. 2009) (citations omitted). The party appealing from a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. *Knoebel v. Clark County Superior Court No. 1*, 901 N.E.2d 529, 531-32 (Ind. Ct. App. 2009). Where the facts are undisputed and the issue presented is a pure question of law, we review the matter de novo. *Crum v. City of Terre Haute ex rel. Dep't of Redev.*, 812 N.E.2d 164, 166 (Ind. Ct. App. 2004).

*Bellows v. Bd. of Comm'rs of Cnty. of Elkhart*, 926 N.E.2d 96, 113-14 (Ind. Ct. App. 2010).

"[T]he requirement that the putative father registers within a certain time limit, is not solely mandated in adoption proceedings but carries its mirror consequences into the paternity proceedings." *In re Paternity of G.W.*, 983 N.E.2d at 1198. Indiana Code section

31-19-9-14 provides that a putative father whose consent to adoption of the child is implied is not entitled to establish paternity of the child. Because we concluded above that the trial court properly determined that Putative Father was not entitled to notice of the adoption of the Child and his failure to timely register with the Registry resulted in his irrevocable implied consent to the adoption of the Child, we conclude that Putative Father is not entitled to establish paternity of the Child. As such, we further conclude that the trial court did not err in granting Mother's motion to dismiss the paternity action filed by Putative Father.

Putative Father also argues that his amended paternity petition, which was styled as being filed on behalf of the Child as next friend, endures. In support, Putative Father cites to this court's opinion in *In re Adoption of E.L.*, 913 N.E.2d 1276 (Ind. Ct. App. 2009). In *In re Adoption of E.L.*, this court concluded that a putative father who was time-barred from petitioning for a paternity determination in his own name could petition for a paternity determination as the child's "next friend" so long as the petition is filed before the child reaches twenty years of age. 913 N.E.2d at 1282. In reaching this conclusion, this court explained that Indiana Code section 31-19-9-14 refers only to the rights of the putative father, not the rights of the child. *Id*. This court acknowledged "the apparent anomaly that a putative father barred by one statutory section from petitioning for paternity on his own behalf may nevertheless succeed in filing, under a different statutory section, substantially the same petition as next friend on behalf of the child," but noted that the seemingly inconsistent result of the different statutes was a matter for the General Assembly to consider. *Id*. at 1282-83. Thus, Putative Father argues that his amended paternity petition, which he styled as

17

being brought as next friend of the Child, remains.

Putative Father, however, fails to recognize that since this court's opinion in *In re Adoption of E.L.* was issued, the General Assembly has amended the code to eliminate the seemingly inconsistent result discussed therein. Indiana Code section 31-14-5-9, which again was adopted after this court's opinion in *In re Adoption of E.L.* was issued, explicitly states that "[a] man who is barred under [Indiana Code article] 31-19 from establishing paternity may not establish paternity by: (1) filing a paternity action as next friend of a child." Thus, because Putative Father is barred from establishing paternity under Indiana Code article 31-19, Putative Father may not establish paternity by filing a paternity action as next friend of the Child. *See* Ind. Code § 31-14-5-9.

## V. Request for Appellate Attorney's Fees

We next turn to the Appellees' request for appellate attorney's fees. In pertinent part, Indiana Appellate Rule 66(E) provides that a court on review "may assess damages if an appeal ... is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorney's fees." In *Orr v. Turnco Mfg. Co.*, 512 N.E.2d 151, 152 (Ind. 1987), the Indiana Supreme Court noted, that an appellate court "must use extreme restraint" in exercising its discretionary power to award damages on appeal. "Hence, the discretion to award attorney fees under App. R. 66(C) is limited to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Boczar v. Meridian St. Found.*, 749 N.E.2d 87, 95 (Ind. Ct. App. 2001) (internal quotation

18

omitted). Here, while we ultimately rule in their favor, we decline to award appellate attorney's fees as requested by the Appellees.

## CONCLUSION

In sum, we conclude that Putative Father was not entitled to notice of the adoption proceedings because he failed to timely register with the Registry, and his failure to timely register amounted to an irrevocably implied consent to the Child's adoption. We further conclude that because Putative Father impliedly consented to the adoption of the Child, he is also barred from establishing paternity of the Child. We also deny the Appellees' request for appellate attorney's fees.

The judgment of the trial court is affirmed, and the matter is remanded for any necessary further proceedings relating to the adoption of the Child by T.B.

BARNES, J., and BROWN, J., concur.