## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 20 2016, 8:42 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Ana M. Stanisic
Carmel, Indiana

ATTORNEY FOR APPELLEE

Lisa V. Schrader
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ana Milomira Stanisic,

*Appellant-Respondent,*

v.

Steven Massa,

*Appellee-Petitioner.*

May 20, 2016

Court of Appeals Case No.
79A02-1507-DR-970

Appeal from the Tippecanoe
Circuit Court

The Honorable Thomas H. Busch,
Judge

Trial Court Cause No.
79C01-0402-DR-16

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Respondent, Ana M. Stanisic (Stanisic), appeals the trial court's Order denying her motion for relief from judgment as to the appointment of a commissioner to execute a quitclaim deed on her behalf following the dissolution of her marriage to Appellee-Petitioner, Steven D. Massa (Massa).

We affirm.

## ISSUES

Stanisic raises four issues on appeal, which we consolidate and restate as the following single issue: Whether the trial court erred by appointing a commissioner to execute a quitclaim deed to Massa on Stanisic's behalf in light of Massa's ongoing contemptuous behavior.

Massa raises one issue on cross-appeal, which we restate as: Whether Stanisic's claim is barred by the doctrine of res judicata.

## FACTS AND PROCEDURAL HISTORY

On June 12, 2000, Stanisic and Massa were married. The couple had been cohabiting since 1991 and had a child together, a daughter, born on March 3, 1993. Stanisic is the sole shareholder of Milo's Property Inc., which owns numerous rental properties in and around West Lafayette, Tippecanoe County, Indiana. Massa is a sales representative for a media company in West Lafayette.

[6]     A few months before the couple's third wedding anniversary, on March 24, 2003, Massa filed a petition to dissolve the marriage. On February 16, 2006, the trial court issued an order on matters of child custody, parenting time, and contempt. It appears that the trial court found Massa to be in contempt for removing certain items of property from Stanisic's storage facility in violation of the standard restraining order.[1] According to Stanisic, the items purportedly removed included numerous family photo albums from her childhood.

[7]     Following mediation, on December 28, 2006, the parties executed a handwritten Settlement Agreement, which provided that "[Stanisic] will convey to [Massa] the real estate at 801 Princess Dr[.,] West Lafayette[,] Ind[iana,] in full and complete settlement of [Massa's] claim for real estate owned by [Stanisic]. [Massa] will return family pictures of [Stanisic]." (Appellant's App. p. 1). The Settlement Agreement also stipulated that Massa "will provide to his attorney all photos of the daughter of the part[ies] in order that his attorney should be able to copy the same and deliver this to the attorney for [Stanisic]." (Appellant's App. p. 1). The Settlement Agreement was entered in court on January 4, 2007.

---

[1] Neither this order nor the transcript of these proceedings are included in the appellate record, nor are the contents of this order described in the chronological case summary. During the final hearing, Massa admitted that the trial court "found [him] in contempt [for] having removed something from the [storage facility]." (June 30, 2009 Tr. p. 30). However, he claimed that he "did not break into the [storage facility] and take [Stanisic's] photographs" as alleged by Stanisic. (June 30, 2009 Tr. p. 30).

[8] In February of 2007, Stanisic transferred physical possession of the Princess Drive property to Massa, but she did not execute a quitclaim deed to transfer ownership. Since that time, Massa has maintained the home and used it as a rental property. On January 30, 2008, Massa filed a petition to enforce the Settlement Agreement's requirement that Stanisic convey ownership of the Princess Drive Property. On June 29, 2009, Stanisic filed a petition to hold Massa in contempt for failing to return photographs pursuant to the Settlement Agreement.

[9] On June 30, 2009, the trial court held a final hearing. During the hearing, Massa testified that he had provided all of the pictures in his possession to his attorney pursuant to the Settlement Agreement, whereas Stanisic testified that she had not received a single photograph. On October 5, 2009, the trial court entered a Decree of Dissolution, dissolving the parties' marriage. In the Decree of Dissolution, the trial court found that Stanisic had failed to sign a quitclaim deed, and Massa had failed to provide photographs to Stanisic; therefore, both parties were found to be in contempt of court. The trial court ordered the parties to purge themselves of the contempt by complying with the Settlement Agreement within twenty-one days of the dissolution date. In addition, the trial court entered a judgment in Stanisic's favor, ordering Massa to pay $6,301.91 in unpaid medical bills within ninety days. If Massa failed to remit payment within ninety days, the Decree of Dissolution provided that he would be required to pay interest in the amount of 18% per year.

[10] More than five years after the parties' marriage was dissolved, on February 4, 2015, Massa filed a petition to emancipate and terminate his child support obligation for the parties' then twenty-one-year-old daughter. On February 6, 2015, Stanisic filed a Verified Motion for Proceedings Supplemental. Stanisic argued that although Massa had paid $6,301.91 to Stanisic pursuant to the Decree of Dissolution, Massa had failed to satisfy the 18% post-judgment interest due. Accordingly, Stanisic asserted that Massa "should be ordered to appear before the [c]ourt to answer as to his non-exempt property subject to execution or proceedings supplemental to execution and to apply any such property toward satisfaction of the judgment." (Appellant's App. p. 104). On February 12, 2015, Massa filed a Motion for Appointment of Commissioner. Massa claimed that Stanisic had refused to sign a quitclaim deed to convey the Princess Drive property pursuant to the Settlement Agreement and Decree of Dissolution. Thus, he requested that the trial court appoint a commissioner to sign a quitclaim deed on Stanisic's behalf.

[11] On March 9, 2015, the trial court held a hearing on the issues of emancipation and child support, the appointment of a commissioner, and proceedings supplemental. During the hearing, Stanisic testified that she refused to sign a quitclaim deed because Massa

> has not complied with [the trial] [c]ourt['s] [o]rder of returning some photo albums and pictures that are irreplaceable and priceless for me. They were a part of the [S]ettlement [A]greement, he agreed at the time with [the mediator] that he was in possession of my child[]hood albums and these pictures of my daughter pre-age [nine] and to date he has [not] returned

those items pursuant to the [Decree of Dissolution and] [p]ursuant to the Settlement Agreement.

(March 9, 2015 Tr. p. 6). In support of her claim, Stanisic presented the court with an affidavit from her former attorney, who attested to the fact that "neither [Massa] or his attorney delivered . . . the photographs as set out in [the Settlement Agreement]." (Appellant's App. p. 110).

[12] In response, Massa testified that he had provided the photographs in his possession to his attorney. He submitted an affidavit from his attorney's assistant, who averred that she had personally packaged the photographs for delivery to Stanisic's attorney. Massa also testified that at a prior hearing, he brought a box containing the "duplicates of the photographs that I gave to her" for Stanisic to copy, but Stanisic did not even examine them. (March 9, 2015 Tr. p. 8). Stanisic, however, claimed that the photographs which Massa had provided were not the photographs contemplated by the Settlement Agreement—*i.e.*, those from Stanisic's childhood and those of the parties' daughter—but rather were photographs of Massa's mother and his children from a prior marriage.[2]

[13] At the close of the evidence, the trial court issued an order, granting Massa's petition to emancipate the parties' child and to terminate his child support

---

[2] Throughout the record, Stanisic repeatedly contends that during the final hearing on June 30, 2009, the trial court reviewed the photographs that Massa provided and held Massa in contempt based on the fact that he had not produced the correct pictures. We note that nowhere in the transcript of the final hearing does it indicate that any pictures were presented to or reviewed by the trial court.

obligation, as well as Massa's Motion for Appointment of Commissioner to execute a quitclaim deed on Stanisic's behalf. The trial court also granted Stanisic's Motion for Proceedings Supplemental and ordered Massa to pay interest on the judgment within thirty days. With respect to the photographs, the trial court stated:

> I believe the two are separate issues that need to be resolved separately and I don't know—there are several Affidavits that have been presented to the [c]ourt which are really not dispositive of the issue. It sounds like each side is relying on the testimony of an attorney who is—who could help clarify what the issue is, what was presented, how—the—whether in fact the requested photographs were in albums, were transferred or not and if not where they might be and that is certainly something worth investigating but I don't find that the issues have been presented in a form that I can decide it.

(March 9, 2015 Tr. p. 12).

[14] On March 16, 2015, Massa filed a Motion for Clarification. Because the Princess Drive property was titled in the name of Milo Properties, Inc., rather than Stanisic individually, Massa requested that the trial court clarify that the commissioner could sign on behalf of Milo Properties, Inc. to transfer the Princess Drive property to Massa. On March 30, 2015, Stanisic filed a motion for relief from judgment pursuant to Indiana Trial Rule 60(B)(7), in which she claimed that Massa was "not entitled to any relief in equity because he is in contempt of [c]ourt." (Appellant's App. p. 126). Specifically, Stanisic argued, in pertinent part, that Massa "has NEVER returned the family pictures of [Stanisic] in accordance with . . . the Settlement Agreement" and "has NEVER

provided to his attorney all photos of the daughter of the part[ies]." (Appellant's App. p. 126). That same day, Stanisic filed a petition for rule to show cause, seeking to have Massa held in contempt, in part, for his failure to turn over the photographs.

[15] On June 25, 2015, the trial court conducted a hearing on the outstanding motions. Stanisic again argued that it is not "equitable" to force her to comply with the Settlement Agreement by executing a quitclaim deed without also demanding that Massa return her photographs in accordance with the Settlement Agreement. (March 9, 2015 Tr. p. 31). Massa, however, reiterated that he had provided the photographs in his possession and further explained that he "never had" any albums of Stanisic's family or childhood pictures. (June 25, 2015 Tr. p. 35).

[16] On June 30, 2015, the trial court issued its Order, determining that Stanisic "undertook the obligation to transfer the property to [Massa] and that [Massa's] Motion to Clarify should be GRANTED." (Appellant's App. p. 227). The trial court also found that, with respect to Stanisic's motion to obtain her photographs, the "matter has been litigated previously and nothing more can be done about the photos and said issue shall not set off the obligation to transfer [the Princess Drive] property." (Appellant's App. p. 227). The court "advise[d] [the] parties to set a date for [Stanisic] to examine [the] box of photos [provided by Massa] in [Massa's] attorney's office." (Appellant's App. p. 227).

[17] Stanisic now appeals. Additional facts will be provided as necessary.

### I. *Standard of Review*

Stanisic appeals from the trial court's Order of June 30, 2015, which addressed Massa's motion to clarify that the commissioner appointed to execute the quitclaim deed could sign on behalf of Milo Properties, Inc., as well as Stanisic's motion for relief from judgment regarding her family photographs. The Order granted Massa's motion and effectively denied Stanisic's motion, stating that the matter of Stanisic's photographs had "been litigated previously and nothing more can be done." (Appellant's App. p. 227).

As the "Indiana Trial Rules do not provide for a 'motion for clarification[,]' our court has previously found that a motion for clarification is tantamount to a motion to correct error. *See Hedrick v. Gilbert*, 17 N.E.3d 321, 325-26 (Ind. Ct. App. 2014) (stating that "it would elevate form over substance to treat a 'motion to clarify' as something other than a motion to correct error" because "Indiana Trial Rule 59(F) plainly states that '[a]ny *modification* . . . following the filing of a Motion to Correct Error shall be an appealable final judgment or order'" (alterations in original)). On appeal, a trial court's ruling on both a motion to correct error and a motion for relief from judgment are generally reviewed under the abuse of discretion standard. *See In re Adoption of K.G.B.*, 18 N.E.3d 292, 296 (Ind. Ct. App. 2014); *Dillard v. Dillard*, 889 N.E.2d 28, 33 (Ind. Ct. App. 2008). Our court does not reweigh evidence, and we will find an abuse of discretion if "the trial court's judgment is clearly against the logic and effect of the facts and circumstances before it or where the trial court errs on a

matter of law." *In re Adoption of K.G.B.*, 18 N.E.3d at 296 (quoting *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013)); *Case v. Case*, 794 N.E.2d 514, 517 (Ind. Ct. App. 2003). If "the issue on appeal is purely a question of law[,]" our review is *de novo*. *In re Adoption of K.G.B.*, 18 N.E.3d at 296.

## II. *Res Judicata*

[20] In its Order, the trial court concluded that the matter of Stanisic's photographs "has been litigated previously and nothing more can be done." (Appellant's App. p. 227). As a result, Massa now contends in his cross-appeal that Stanisic's claim is barred by res judicata. Specifically, Massa states that "[a]t the beginning of the June [25], 2015 hearing, [Massa] objected to the testimony about the pictures because the issue had already been litigated on March 9, 2015." (Appellee's Br. p. 9). According to Massa, "[t]he court heard evidence on March 9 and found insufficient evidence to rule. [Therefore,] [Stanisic] should not have another opportunity to present evidence on the same issue of the pictures." (Appellee's Br. p. 8).

[21] The doctrine of res judicata "serves to prevent repetitious litigation of disputes which are essentially the same." *Kalwitz v. Kalwitz*, 934 N.E.2d 741, 750 (Ind. Ct. App. 2010). Res judicata consists of both claim preclusion and issue preclusion. *Id.* Claim preclusion is applicable "where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between those parties and their privies." *In re Adoption of Baby W.*, 796 N.E.2d 364, 373 (Ind. Ct. App. 2003), *trans. denied*. In turn, issue preclusion, also known as collateral estoppel, "bars the subsequent

relitigation of the same fact or same issue between the same parties or their privies where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action." *French v. French*, 821 N.E.2d 891, 896 (Ind. Ct. App. 2005). When, as in the present case, a party argues that claim preclusion applies, the following factors must be present:

> (1) the former judgment was rendered by a court of competent jurisdiction; (2) the former judgment was rendered on the merits; (3) the matter now at issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action was between parties to the present suit or their privies.

*Kalwitz*, 934 N.E.2d at 750. Under claim preclusion, "all matters that were or might have been litigated are deemed conclusively decided by the judgment in the prior action." *Id.*

[22] We find that Stanisic was not barred by res judicata from litigating her claim at the June 25, 2015 hearing because the trial court did not issue a judgment on the merits in its March 9, 2015 order with respect to the photographs. Rather, the trial court specifically stated that the matter of the quitclaim deed and the photographs "are separate issues that need to be resolved separately" and the issue of the photographs "is certainly something worth investigating but I don't find that the issues have been presented in a form that I can decide it." (March 9, 2015 Tr. p. 12). Thus, the trial court's March 9, 2015 order decided only Massa's claim for the quitclaim deed notwithstanding his obligation to produce the photographs. Moreover, Stanisic filed a motion for relief from judgment

challenging the trial court's March 9, 2015 order on the basis that equitable principles precluded the issuance of a quitclaim deed in light of Massa's failure to comply with the Settlement Agreement. Thus, she was not relitigating the matter at the hearing on June 25, 2015, but rather was availing herself of the trial court's procedural remedies prior to filing an appeal on the matter. *See* Ind. Trial Rule 60(B).

### III. *Unclean Hands*

Stanisic challenges the trial court's denial of her motion for relief from judgment, claiming that it was not equitable for Massa to receive a quitclaim deed to the Princess Drive Property due to his ongoing contemptuous behavior—*i.e.*, his failure to return Stanisic's family photographs pursuant to the Settlement Agreement. In other words, Stanisic argues that Massa is "not entitled to the equitable relief of the [c]ommissioner signing the [q]uitclaim [d]eed because he had and continues to have *unclean* hands." (Appellant's Br. p. 13). Although Stanisic did not specifically raise the issue of unclean hands before the trial court, she did repeatedly assert that Massa is not entitled to a quitclaim deed based on his own failure to adhere to the Settlement Agreement.

> The unclean-hands doctrine is an equitable tenet that demands one who seeks equitable relief to be free of wrongdoing in the matter before the court. The purpose of the unclean-hands doctrine is to prevent a party from reaping benefits from his or her misconduct. For the doctrine of unclean hands to apply, the alleged wrongdoing must be intentional and must have an immediate and necessary relation to the matter being litigated. The doctrine of unclean hands is not favored by the courts and must be applied with reluctance and scrutiny.

*Kahn v. Baker*, 36 N.E.3d 1103, 1116-17 (Ind. Ct. App. 2015) (citations omitted), *trans. denied*.

[25]     Stanisic asserts that Massa intentionally refused to comply with the Settlement Agreement.  More particularly, she argues that

> [i]t was completely reasonable to assume that [Massa] would only agree to return the 'family pictures of [Stanisic]' and 'all of the photos of the daughter of the part[ies]' because he actually had them in his possession at the time of his agreement to and execution of the . . . Settlement Agreement, unless his intent was, in fact, to deceive [Stanisic] into having her execute the [q]uitclaim [d]eed, ultimately deceiving the [c]ourt as well.

(Appellant's Br. p. 14).  Stanisic further asserts that Massa "admitted to his intentional deception and *unclean hands* in the proceedings.  [Massa] gave sworn testimony as to having intentionally deceived [Stanisic] in agreeing to and executing the December 28, 2006 Settlement Agreement."  (Appellant's Br. p. 14).  We find that this is a gross mischaracterization of the evidence.  Massa testified that he agreed to the term in the Settlement Agreement because his "attorney told me that it was a negligible aspect and that I would return whatever [pictures] I had so that is what I did."  (June 30, 2009 Tr. p. 82).

[26]      Based on the evidence before us, we cannot say that Massa engaged in intentional misconduct.  Stanisic testified that during a prior dissolution proceeding, the trial court held Massa in contempt because he had broken into her storage unit and removed the photo albums.  However, neither the transcripts of this proceeding, the trial court's contempt order, nor a coherent

summary of that evidence has been presented to our court. Furthermore, Massa testified that, although he was held in contempt for "having removed something from the [storage facility,]" he never removed Stanisic's photo albums. (June 30, 2009 Tr. p. 30). Keeping in mind our policy of applying the unclean-hands doctrine "with reluctance and scrutiny[,]" we decline to reweigh the conflicting testimonies in Stanisic's favor. *Kahn*, 36 N.E.3d at 1117.

[27] Our review of the available evidence indicates that, in the Decree of Dissolution, the trial court held Massa in contempt for failing to produce photographs pursuant to the Settlement Agreement. Thereafter, Massa stated that he gathered all of the photographs that he had in his possession and presented them in a box for Stanisic to review. However, Stanisic testified that, pursuant to the Settlement Agreement, she expected to receive from Massa approximately fifteen "family albums dated from birth until [Massa] violated that storage facility in May of 2003." (June 25, 2015 Tr. pp. 23-24). She now insists that

> [t]he only pictures which [Massa] ever tendered to [Stanisic] were pictures of HIS mother and HIS children from a previous marriage from the year 2003, the year after . . . Massa separated legally from [Stanisic] in 2002. They were not those which he had agreed to return in the . . . Settlement Agreement.

(Appellant's Br. p. 14) (citation omitted).

[28] We note that the plain language of the Settlement Agreement provides simply that Massa was obligated to "return family pictures of [Stanisic]" and "all

photos of the daughter of the part[ies]." (Appellant's App. 1). *See Bailey v. Mann*, 895 N.E.2d 1215, 1217 (Ind. 2008) ("Unless the terms of the agreement are ambiguous, they will be given their plain and ordinary meaning."). The Settlement Agreement does not provide any further details as to the nature of the pictures purportedly in Massa's possession—*i.e.*, it does not specify that there were fifteen albums; nor does it indicate that the photographs comprised Stanisic's childhood "family" photographs as opposed to Stanisic's general "family" photographs that might include Massa, their child together, her former stepchildren, her former mother-in-law, etc. (Appellant's App. p. 1). Moreover, Massa explained:

> I have half of the photographs that we had. I separated all of the photographs that I had that were duplicates. I gave her half of them and I don't have anything from her father, from her family, from these [fifteen] albums. I never said that I did.
> * * * *
> I've explained when I've been asked do you have some photographs I said yes I have some photographs. And she is misconstruing that to you to mean that I admitted to having the photographs that she is asking about now [ten] years later. So if she is going to find a box of photographs of my kids and her kid and her and her family and I've already given those to her half of them.
> * * * *
> But this is everything that I have left and you are not going to find [fifteen]—she's not going to find [fifteen] supposed—I don't even—frankly if I had to be completely honest with you which I will be I have never seen [fifteen] photo albums of her family that she is even speaking about. They've never existed as far as I know.

(June 25, 2015 Tr. pp. 35-36).

Accordingly, the evidence supports a finding that Massa provided all of the photographs in his possession to Stanisic pursuant to the Settlement Agreement, and Massa repeatedly stated that he does not have any other family photographs of Stanisic. As such, we find that Stanisic has failed to establish that Massa engaged in intentional misconduct, so the doctrine of unclean hands is not applicable.[3]

## CONCLUSION

Based on the foregoing, we conclude that the trial court acted within its discretion by denying Stanisic's motion for relief from judgment and appointing a commissioner to execute a quitclaim deed on Stanisic's behalf.

Affirmed.

Kirsch, J. and Pyle, J. concur

---

[3] Because we find no intentional misconduct on Massa's part, we need not address whether the alleged wrongdoing had "an immediate and necessary relation to the matter being litigated." *Kahn*, 36 N.E.3d at 1117.